**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **EQUAL EMPLOYMENT OPPORTUNITY COMMISSION** | * | |
| | * | |
| **Plaintiff** | * | |
| | * | |
| **v.** | | **Case No. 1:09-CV-2418 RDB** |
| | * | |
| **GREATER BALTIMORE MEDICAL CENTER, INC.** | * | |
| | * | |
| **Defendant.** | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM IN SUPPORT OF DEFENDANT**
**GREATER BALTIMORE MEDICAL CENTER, INC.'S**
**MOTION FOR SUMMARY JUDGMENT**

Greater Baltimore Medical Center, Inc. ("GBMC") defendant, by counsel, submits this memorandum in support of its motion for summary judgment.

**INTRODUCTION**

The Equal Employment Opportunity Commission ("EEOC") filed the instant suit on behalf of Michael Turner, a former employee at GBMC, alleging that GBMC discriminated against Mr. Turner on the basis of his disability in violation of the Americans with Disabilities Act ("ADA"). Mr. Turner was a unit secretary at GBMC who took a nearly 18-month leave of absence as a result of necrotizing fasciitis (flesh eating disease) and a stroke. Mr. Turner was not re-hired by GBMC when he attempted to return from leave and the EEOC claims GBMC declared Mr. Turner incapable of performing his position, denied him a reasonable accommodation, unlawfully discharged him, and failed to rehire him because of his disabilities.

The suit alleges that Mr. Turner was at all relevant times physically capable and willing to perform all essential functions of his position, with or without reasonable accommodation.

During those same relevant times Mr. Turner has been receiving Social Security disability benefit payments based on his being disabled and unable to work. Accordingly, the EEOC and the nominal plaintiff, Mr. Turner, are estopped from asserting that Mr. Turner is able to work and therefore the EEOC is unable to establish all of the elements of a discrimination claim under the ADA. In addition, the EEOC's claim that GBMC was required by the ADA to reassign Mr. Turner to a vacant position as a reasonable accommodation fails as a matter of law. GBMC was not legally obligated to reassign Mr. Turner to a vacant position after receiving medical clearance to resume work while on a general leave of absence. Moreover, Mr. Turner never asked for any accommodation and has always taken the position that he needs no accommodation. Thus, to the extent the EEOC's claims are based on a failure to accommodate, those claims are defective as a matter of law because the EEOC cannot show that GBMC refused to accommodate Mr. Turner. Moreover, Mr. Turner never raised reassignment to a vacant position as a reasonable accommodation, and the EEOC never investigated or attempted to conciliate such a claim. Therefore, the claim is barred.

## UNDISPUTED FACTS

Mr. Turner was an employee at GBMC for 21 years, when, in January 2005, he took a leave of absence as a result of the development of several severe medical conditions. *See* Deposition Transcript of Michael E. Turner, excerpts of which are attached as ***Exhibit 1*** at 13, 26. At that time, Mr. Turner was a full time unit secretary in the post-partum unit at GBMC. *Id.* Mr. Turner was hospitalized for treatment of necrotizing fasciitis, or flesh eating disease, in January 2005, and was released from the hospital in July 2005. *Id.* at 26 -27. Mr. Turner was hospitalized again in November 2005 until December 28, 2005, as a result of a stroke. *Id.* at 41.

At or about the time Mr. Turner was released from his hospitalization for the stroke, Mr. Turner's mother, on Mr. Turner's behalf, applied for Social Security Disability benefits. *See* Application for Disability Insurance Benefits dated December 9, 2005, a copy of which is attached as ***Exhibit 2***, and Function Report dated January 9, 2006, attached as ***Exhibit 3***. In connection with his application, Mr. Turner completed a Disability Report, in which he stated that he was unable to work as a result of his necrotizing fasciitis, diabetes, and stroke. *See* Disability Report, a copy of which is attached as ***Exhibit 4***. Mr. Turner also signed authorizations to disclose information to the Social Security Administration ("SSA"). *See* authorization attached as ***Exhibit 5***. Those forms were witnessed and signed by Mr. Turner's mother, Margaret Turner.

In January 2006, the SSA determined that Mr. Turner was disabled and awarded Mr. Turner benefits retroactive to January 2005, when he was first hospitalized with the necrotizing fasciitis. *See* SSA Notice of Award, a copy of which is attached as ***Exhibit 6***. The application for Social Security Disability benefits completed by Mr. Turner required Mr. Turner to notify the SSA if he was able to work even if he was unable to find a job. *See* Ex. 2. Despite the admissions made in the pleadings and in discovery that Mr. Turner is physically capable and willing to perform all essential functions of his position, Mr. Turner has not advised the SSA that he is able to work. Cmpl. ¶ 9; Turner Dep. at 190; Response to Request for Admission No. 4, attached as ***Exhibit 7***. Mr. Turner continues to receive monthly Social Security Disability benefits of $1,100. Turner Dep. at 190.

Upon being hospitalized in January 13, 2005, Mr. Turner took leave under the Family and Medical Leave Act ("FMLA"). Mr. Turner's request for FMLA leave was approved by GBMC for a 12-week period that started on January 11, 2005. Mr. Turner's FMLA leave was

exhausted on April 7, 2005.  *See* Family Medical and Intermittent Leave Application dated February 11, 2005, a copy of which is attached as ***Exhibit 8***.  Mr. Turner then applied for and received a general leave of absence ("GLOA") pursuant to GBMC's policy beginning on April 8, 2005.  *See* GBMC Management Policy and Procedure Manual, attached as ***Exhibit 9***.  On the first day of the GLOA Mr. Turner's employee status was changed to LOA, for leave of absence.  *Id*.  Under the GLOA, an employee with more than 10 years of service is eligible for **<u>up to</u>** twelve months of general leave.  There is no guarantee that the employee's position will be held while on GLOA.  *Id.*, p. 2.  GBMC also does not guarantee that a position will be available for an employee returning from a GLOA; rather, the returning employee will be considered for available vacancies for which he qualifies upon release to work.  *Id*.  While on an approved GLOA, "the Medical Center will maintain the employee's health benefits, *as if* the employee continued to be actively employed."  *Id*., p. 5.  (Emphasis added).  The purpose of the GLOA policy is to enable employees with medical conditions to receive health benefits.  See Deposition Transcript of Susan Hussey, excerpts of which are attached as ***Exhibit 10***, at 197-98.

When returning from GLOA due to a serious health condition, an employee must provide medical certification to the Employee Health Department indicating that the employee is able to resume work and must be evaluated by the Employee Health Department for a fitness for duty evaluation.  *See* Ex. 9., p. 6.  After his hospitalization in January 2006, Mr. Turner advised GBMC in early 2006 that he wished to return to work at GBMC.  *See* Turner Dep. at 56.  Consistent with its general leave policy, on February 13, 2006, GBMC requested that Mr. Turner provide a Return to Duty/Medical Restriction Form completed by his physician.  *See* February 13, 2006, letter attached as ***Exhibit 11***.  GBMC received a completed form dated February 28, 2006, signed by Mr. Turner's physician, Nathan Rosenblum, which indicated that Mr. Turner

could return to duty March 6, but was restricted in walking and bending and could not lift more than five pounds. *See* GBMC Healthcare Occupational Injury Management Return to Duty/Medical Restriction Form, attached as ***Exhibit 12***.[1]

On March 30, 2006, Mr. Turner was examined by Dr. Paul Valle of GBMC's Employee Health Department. *See* Deposition Transcript of Paul Valle attached as ***Exhibit 15***, at 63. Dr. Valle evaluated Mr. Turner and recommended that Mr. Turner be limited to working four hours per day, three days a week in a low volume area with little multitasking. *Id.* at 89-90. Mr. Turner wanted to return to his position as a unit secretary in the labor and delivery department; however, Dr. Valle recommended against Mr. Turner working in that capacity. *Id.* at 98-99. Dr. Valle did not clear Mr. Turner to return to work as a unit secretary based on his view that Mr. Turner was not medically qualified to handle the multi-tasking involved in that position. *Id.* Dr. Valle did, however, clear Mr. Turner to work as a file clerk. *Id.* at 117.

Mr. Turner did not ask GBMC for any accommodation to enable him to return to work and Mr. Turner did not believe he needed any accommodation. Turner Dep. at 161-62. Mr. Turner completed an intake questionnaire for the EEOC on January 12, 2007, in which he stated, under penalty of perjury, that he did not ask for any accommodations because none were needed. *See* Intake Questionnaire attached as ***Exhibit 16***. Mr. Turner's deposition testimony was to the same effect. Turner Dep. at 162. Nevertheless, members of GBMC's HR department continued

---

[1] Remarkably, Dr. Rosenblum conceded that he filled out the medical restriction form with the information provided to him in a letter from Mr. Turner's mother. *See* Deposition Transcript of Nathan Rosenblum, attached as ***Exhibit 13*** at 94-100. Indeed, Dr. Rosenblum's "medical opinion" did not diverge at all from the information Mrs. Turner provided. *Id.* at 100. Dr. Rosenblum did not do any tests to determine Mr. Turner's strength in his arms or legs, nor did he review records of Mr. Turner's treatment at the Good Samaritan Hospital's Physical Therapy Department. *Id.* at 96, 100. If Dr. Rosenblum's "medical opinion" was not suspect enough, Margaret Turner, a retired registered nurse, testified that she, not Dr. Rosenblum, filled out the medical restriction form because she believed that she was more qualified than Dr. Rosenblum to complete the form. *See* Deposition Transcript of Margaret Turner attached as ***Exhibit 14*** at 76. Dr. Rosenblum did not confirm with Mrs. Turner what tests or assessments she allegedly performed to complete the medical evaluation form. *Id.* at 77.

to work to find available positions within GBMC for Mr. Turner.  *See* Deposition of Diane Owen attached as ***Exhibit 17*** at 60.

In fact, GBMC took unprecedented steps to assist Mr. Turner in returning to work at GBMC.  *Id.* at 32.  When Mr. Turner's GLOA was due to expire on February 9, 2006, the manager of the post-partum unit, and Mr. Turner's supervisor, Etna Weinhold, requested that GBMC extend Mr. Turner's GLOA for three months so that Mr. Turner could continue to receive his health benefits.  *Id.* at 50-51.  In recognition of Mr. Turner's long tenure at GBMC and his supervisor's request, Mr. Turner's GLOA was extended, ultimately, until the end of June 2006.  *See Id.* at 32.  Mr. Turner's GLOA, as extended, expired on June 30, 2006, and consistent with GBMC's written leave policy, Mr. Turner was separated from GBMC.

Mr. Turner filed a charge of discrimination against GBMC with the EEOC on February 21, 2007, alleging disability discrimination based on his discharge from employment and the failure to reinstate him to his unit secretary position.  *See* Charge of Discrimination attached as ***Exhibit 18***.  The dates that the alleged discrimination took place were July 1, 2005, to January 31, 2007.  An amended charge was filed by Mr. Turner on February 28, 2007, that added a sex discrimination claim and claimed disability discrimination.  *See* Amended Charge of Discrimination attached as ***Exhibit 19***.  Turner charged that he was "denied reinstatement to [his] previous position, denied hire into other positions for which [he was] qualified, and discharged because of [his] disability in violation of the [ADA]."  *Id.*  The amended charge limited the period of discrimination from May 15, 2006, to June 30, 2006.  The EEOC investigated those charges and requested documents and a position statement from GBMC regarding the issues covered by the charge and the amended charge.  In April 2007, GBMC submitted its position statement with the EEOC addressing the specific charges.

The EEOC took no further action for nearly two years until early March 2009 when it requested documents from GBMC. On March 31, 2009, the EEOC issued a letter of determination that found reasonable cause to believe that GBMC violated the ADA by terminating Mr. Turner because of his disability and that GBMC was unwilling to employ Mr. Turner in any capacity for which he was qualified. *See* Letter of Determination attached as **Exhibit 20**. The EEOC also stated that it was "unable to conclude that the information obtained establishes any other violation of the statutes." *Id.* Shortly thereafter, the EEOC engaged in conciliation with GBMC, which proved fruitless. Mr. Turner never charged GBMC with a failure to accommodate him and the EEOC never investigated, made a determination, or conciliated a claim for failure to accommodate.

## STANDARD OF REVIEW

A defendant moving for summary judgment must show the absence of any genuine issue of material fact and that it is entitled to judgment as a matter of law. *Barwick v. Celotex Corp.*, 736 F.2d 946, 958 (4th Cir. 1984). "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (citations omitted).

"If the moving party would not bear the burden of proof at trial, its initial burden is met by 'pointing out' that the nonmoving party has not made a sufficient showing on an essential element of its case. After this initial showing, summary judgment will be granted unless the opponent produces evidence upon which a reasonable jury could return a verdict in its favor." *Lyle v. ESPN Zone*, 292 F. Supp. 2d 758, 762 (D. Md. 2003) (citing *Celotex*, 477 U.S. at 323-25).

Only disputed issues of material fact, determined by reference to the applicable substantive law, will preclude the entry of summary judgment. "Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, (1986); *see also Khan v. Popeyes of Md., Inc.*, 179 F.Supp.2d 548 (D. Md. 2002). "'[A] party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences.' Indeed, this Court has an affirmative obligation to prevent factually unsupported claims and defenses from going to trial." *Ogeuzuonu v. Genesis Health Ventures, Inc.*, 415 F.Supp.2d 577, 583 (D. Md. 2005) (quoting *Shin v. Shalala*, 166 F.Supp.2d 373, 375 (D. Md. 2001)). Moreover, "[a] party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn statement (by, say, filing a later affidavit that flatly contradicts that party's earlier sworn deposition) without explaining the contradiction or attempting to resolve the disparity." *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806-07 (1999). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, disposition by summary judgment is appropriate." *Teamsters Join Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991).

## ARGUMENT

**I.      MR. TURNER IS ESTOPPED FROM CLAIMING TO BE A QUALIFIED INDIVIDUAL WITH A DISABILTY BECAUSE HE RECEIVES SOCIAL SECURITY DISABILITY PAYMENTS BASED ON HIS REPRESENTATION THAT HE CANNOT WORK BECAUSE OF HIS DISABILITIES.**

Mr. Turner applied for Social Security disability benefits in December 2005, claiming that he became unable to work because of a disabling condition on January 15, 2005. Based on that application, and the accompanying medical review, Mr. Turner was deemed disabled by the SSA beginning in January 2005 and awarded Social Security disability benefits in January 2006,

retroactive to the onset of his claimed disability.  The application for Social Security disability benefits required Mr. Turner to inform the SSA if he was able to work even if he did not obtain a job.  *See* Ex. 2.  Despite the claims made in this action that Mr. Turner is able to work, Mr. Turner has never advised the SSA that he is able to work; rather, Mr. Turner continues to receive Social Security disability benefits.  *See* Exs. 1 and 7.

In light of his representations to the SSA that he is totally disabled, and the four and one-half years of disability payments that he has received, Mr. Turner is judicially estopped from making a contrary claim in the instant proceeding.  The EEOC's ADA claim on behalf of Mr. Turner is premised upon the assertion that Mr. Turner can work.  Such a claim, however, stands in direct contrast to statements in the Social Security disability benefits application that the plaintiff is unable to work.[2]  The Supreme Court examined this issue directly:

> [I]in some cases an earlier SSDI claim may turn out genuinely to conflict with an ADA claim.  Summary judgment for a defendant is appropriate when the plaintiff "fails to make a showing sufficient to establish the existence of an element essential to [her] case, and on which [she] will bear the burden of proof at trial. " An ADA plaintiff bears the burden of proving that she is a "qualified individual with a disability" – that is, a person "who, with or without reasonable accommodation, can perform the essential functions" of her job. And a plaintiff's sworn assertion in an application for disability benefits that she is, for example, "unable to work" will appear the negate an essential element of her ADA case – at least if she does not offer a sufficient explanation.  For that reason, we hold that an ADA plaintiff cannot simply ignore the apparent contradiction that arises out of the earlier SSDI total disability claim.  Rather, she must proffer a sufficient explanation.

---

[2]  The Social Security Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any . . physical or mental impairment."  42 U.S.C. § 423(d)(1).  The individual's impairment. . . . must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ."  42 U.S.C. § 423 (d)(2)(A) (emphasis added).  By contrast, the iteration  of  the ADA that is relevant here prohibits discrimination "against a qualified individual with a disability because of the disability of such individual."  42 U.S.C. § 12112(a).  A "qualified individual with a disability" is a disabled person "who . . . can perform the essential functions" of his job.  42 U.S.C. § 12111 (8).

*Cleveland v. Policy Management Sys. Corp.,* 526 U.S. 795, 805-06 (1999) (emphasis added)

(citations omitted).

The *Cleveland* Court then laid out the following framework when examining the

inconsistency at the summary judgment stage:

> When faced with a plaintiff's previous sworn statement asserting "total disability" or the like, the court should require an explanation of any apparent inconsistency with the necessary elements of an ADA claim.  To defeat summary judgment, that explanation "must be sufficient to warrant a reasonable juror's concluding that, assuming the truth of, or the plaintiff's good faith belief in, the earlier statement, the plaintiff could nonetheless "perform the essential functions" of [his] job, with or without "reasonable accommodation."

*Id.* at 807 (emphasis added).  In other words, a plaintiff has to provide a satisfactory explanation

for the discrepancy, and this explanation cannot be in the form of "an affidavit that flatly

contradicts that party's earlier sworn [testimony]."  *Id.* at 806.  Neither Mr. Turner nor the EEOC

has offered any explanation for the inconsistency in their position and no legitimate explanation

can be offered.

Since *Cleveland*, several courts in the Fourth Circuit have applied judicial estoppel

where, like here, a plaintiff's statements about his inability to work contradicted the claims

asserted in the litigation.  *See, e.g., Cochran v. Holder*, 2010 WL 447013 (E.D. Va. 2010)

(granting defendant's motion for summary judgment where plaintiff who was receiving disability

payments failed to "offer sufficient explanation that would warrant a reasonable juror concluding

that despite Plaintiff's earlier statements under oath, he could 'perform the essential functions' of

his job"); *Hamilton v. Dayco Products, LLC*, 2009 WL 335062 (D.S.C. 2009) (holding that

plaintiff was judicially estopped from asserting her ADA claim where plaintiff had made specific

factual statements about her inability to work that directly contradicted her ADA claim); *Mitchell*

*v. Washingtonville Cent. Sch. Dist.*, 190 F.3d 1, 6 (2d Cir. 1999) (applying *Cleveland*, Second

Circuit held that plaintiff who claimed before SSA that he was incapable of standing or walking and was unable to work in his job was estopped from asserting ADA claim in which he argued he was capable of standing and walking for purposes of working).

Michael Turner applied for Social Security disability benefits in December 2005, and represented that he was unable to work because of his disabilities. Based on those representations and a review of Mr. Turner's medical history, the SSA, in January 2006, determined that Mr. Turner was disabled and unable to work retroactive to January 2005. Since January 2006, Mr. Turner has been receiving Social Security disability benefits and has never advised the SSA that he is able to work. The EEOC, however, which is bringing suit on behalf of Mr. Turner, claims that at all relevant times Mr. Turner has been physically capable and willing to perform the essential functions of his job, with or without reasonable accommodation. Cmpl. ¶9. Summary judgment in favor of GBMC on the EEOC's complaint is warranted here based on judicial estoppel that bars Mr. Turner and the EEOC from taking contradictory positions about Mr. Turner's ability to work.

## II.   THE EEOC CANNOT ESTABLISH A FAILURE TO ACCOMMODATE CLAIM BECAUSE MR. TURNER NEVER REQUESTED AN ACCOMMODATION AND MR. TURNER CONTENDS THAT HE DID NOT AND DOES NOT NEED AN ACCOMMODATION.

The EEOC contends that GBMC declared Mr. Turner incapable of performing his position with or without reasonable accommodation and denied him a reasonable accommodation. Cmpl. ¶ 10. To prove an ADA "failure to accommodate" claim the EEOC must show:

> (1) that [Mr. Turner] was an individual who had a disability within the meaning of the statute;
>
> (2) that [GBMC] had notice of his disability;
>
> (3) that with reasonable accommodation [Mr. Turner] could perform the essential functions of the position . . . ; and

(4) that [GBMC] refused to make such accommodations.

*Rhoads v. Federal Deposit Ins.*, 257 F.3d 373, 387 n.11 (4th Cir. 2001). "Implicit in that fourth element is the requirement that the employee has, in good faith, engaged in an interactive process to identify, in cooperation with the employer, what would constitute a reasonable accommodation." *May v. Roadway Express, Inc.*, 221 F. Supp. 2d 623, 627 (D. Md. 2002) (citing *Loulseged v. Akzo Nobel Inc.*, 178 F.3d 731, 736 (5th Cir. 1999)).

"The plaintiff in an ADA suit bears the burden of demonstrating that [he] could perform the essential functions of [his] job with reasonable accommodation." *Tangires v. Johns Hopkins Hospital*, 79 F. Supp. 2d 587, 597 (D. Md. 2000) (citing *Tyndall v. National Educational Centers, Inc.*, 31 F.3d 209, 213 (4th Cir. 1994). "An employee is precluded from bringing suit under the ADA for failure to accommodate if such employee has failed to inform the employer of his or her need for a specific accommodation." *Tangires*, 79 F. Supp. 2d at 597 (citation omitted).

The EEOC cannot prove that GBMC refused to make any accommodations for Mr. Turner because it cannot show that Mr. Turner has, in good faith, engaged in an interactive process to identify, in cooperation with GBMC, what would constitute a reasonable accommodation. Mr. Turner testified he did not ask GBMC for any accommodation to enable him to return to work. Turner Dep. at 161-62. Indeed, Mr. Turner did not believe he needed any accommodation. *Id.* Moreover, Mr. Turner completed the EEOC's intake questionnaire and noted that he did not ask for a reasonable accommodation because none was needed. *See* Ex. 13. The EEOC can provide no evidence that Mr. Turner engaged in a good faith attempt to work with GBMC to find reasonable accommodation because Mr. Turner has always believed he does not need an accommodation. *See White v. Hedwin Corp.*, 2009 WL 3246953, *5 (D. Md. 2009)

(plaintiff who stated in his deposition that it was not his responsibility to request accommodation is unable to meet his burden to establish that defendant failed to provide plaintiff with reasonable accommodation for his disability); *see also Tangires*, 79 F. Supp. 2d at 597 (because employee did not inform her employer of need for a specific accommodation, plaintiff may not proceed to trial based on the alleged denial of accommodation).

Thus, to the extent that the EEOC is claiming that GBMC failed to accommodate Mr. Turner, those claims fail as a matter of law.

III.   **THE EEOC'S CLAIM THAT GBMC DISCRIMINATED AGAINST MR. TURNER BY FAILING TO REASSIGN HIM TO A VACANT POSITION IS BARRED BECAUSE MR. TURNER DID NOT RAISE THAT CLAIM IN HIS ADMINISTRATIVE CHARGE AND THE EEOC DID NOT INVESTIGATE OR CONCILIATE THAT CLAIM.**

An individual alleging discrimination under the ADA must first file an administrative charge. *Rohan v. Networks Presentation LLC*, 175 F. Supp. 2d 806, 809 (D. Md. 2001). The administrative charge plays a substantial role in focusing the formal litigation it precedes. If the claims raised in the complaint "exceed the scope of the EEOC charge and any charges that would naturally have arisen from an investigation thereof, they are procedurally barred." *Dennis v. County of Fairfax*, 55 F. 3d 151, 156 (4th Cir. 1995). Therefore, "the allegations contained in the administrative charge of discrimination generally operate to limit the scope of any subsequent judicial complaint." *Evans v. Techs. Applications & Serv. Co.*, 80 F. 3d 954, 962-63 (4th Cir. 1996).

Mr. Turner filed a charge of discrimination on or about February 21, 2007, alleging that he was discharged from his unit secretary position and not reinstated due to his disability in violation of the ADA. *See* Ex. 18. Mr. Turner filed an amended charge on or about February 28, 2007, which added claims that he was discriminated against on the basis of his sex in violation of

Title VII of the Civil Rights Act of 1964, and that he was denied hire into other positions for which he was qualified. Mr. Turner stated under oath in both the EEOC intake questionnaire and in his deposition that he did not request or need an accommodation. Ex. 16; Turner Dep. at 161-62.

In *Rohan*, Rohan's administrative charge claimed both sex and disability discrimination. 175 F. Supp. 2d at 810. Specifically, Rohan alleged that she was wrongfully terminated and subject to a sexually hostile environment in violation of Title VII and the ADA. Rohan brought suit against her former employer for, among other things, a failure to accommodate. This Court, however, dismissed that claim "[b]ecause the failure to accommodate claim was not within the ambit of a reasonable investigation stemming from Rohan's charge of discrimination, the administrative remedy as to this claim has not been exhausted." 175 F. Supp. 2d at 811. Rohan, like Mr. Turner here, did not indicate in her charge that she was claiming a failure to accommodate. Also like Mr. Turner, Rohan completed a form in conjunction with the charge in which she stated that she did not need an accommodation. *Id.* at 810.

This Court noted that "Rohan's silence on the charge form as to the need for or denial of any accommodation, coupled with her flat denial on the ADA form about the need for accommodation, would have foreclosed an EEOC investigation into whether [her employer] failed to accommodate Rohan." *Id*. at 810-11. *See also Jones v. Sumser Retirement Village*, 209 F. 3d 851, 853-54 (6th Cir. 2000) (holding that court lacked subject matter jurisdiction on Title VII claims that did not explicitly state in charge of discrimination a failure to accommodate and such claim could not reasonably be expected to grow out of the EEOC charge). Similarly, Mr. Turner's silence on the charge form and his denial of a need for an accommodation foreclosed the EEOC's investigation into whether GBMC failed to accommodate Mr. Turner.

The EEOC is permitted under section 706 of Title VII to bring suit as to matters not included in the charge of discrimination "that the EEOC ascertains in the course of reasonable investigation are actionable." *Gen. Tel. Co. of the NW, Inc. v. EEOC*, 446 U.S. 318, 331 (1980). The EEOC may not, however, use the reasonable investigation rule to circumvent Title VII's integrated, multistep enforcement procedure of investigation, determination and conciliation as to additional allegations of discrimination. *Occidental Life Ins. Co. of California v. EEOC*, 432 U.S. 355, 359-60 (1977). "[T]here must be investigation and conciliation of a claim before it is litigated." *EEOC v. KECO Indus., Inc.*, 748 F. 2d 1097, 1102 (6th Cir. 1984). While the reasonable investigation rule allows the EEOC to expand its administrative proceedings beyond the mere allegations in a charge, the EEOC may only bring a claim under section 706 to remedy allegations of discrimination it investigates, finds reasonable cause to believe are true, and attempts in good-faith to conciliate. *EEOC v. Outback Steakhouse of Fla., Inc.*, 520 F. Supp. 2d 1250, 1262 (D. Colo. 2007).

With respect to Title VII's conciliation requirement, "[n]othing less than a 'reasonable' effort to resolve with the employer the issues raised by the complainant will do." *EEOC v. Asplundh Tree Expert Co.*, 340 F. 3d 1256, 1260 (11th Cir. 2003). "This effort must, at a minimum, make clear to the employer the basis for the EEOC's charges against it. Otherwise, it cannot be said that the [EEOC] has provided a meaningful conciliation opportunity." *Id*.

The EEOC did not conduct an investigation into a failure to accommodate claim because Mr. Turner never raised one. In fact, Mr. Turner emphatically denied that he needed an accommodation. *See* Ex. 16; Turner Dep. at 162. The position statement that GBMC sent to the EEOC never discussed a failure to accommodate claim because none was raised by the EEOC after its investigation in 2007. The EEOC did not make a reasonable cause determination as to a

failure to accommodate claim.  Finally, the EEOC did not attempt conciliation with GBMC on the basis of an allegation of failure to accommodate.

The failure to accommodate claim cannot be raised for the first time in a Title VII lawsuit.  The statutory prerequisite to a suit must be met.  *See, e.g., EEOC v. CRST Van Expedited, Inc.,*, No. 2009 WL 2524402, *19 (N.D. Iowa 2009); *EEOC v. Target Corp.*, 2007 WL 1461298, *3 (E.D. Wis. 2007); *EEOC v. Outback Steakhouse of Fla., Inc.*, 520 F. Sup. 2d 1250, 1263-68 (D. Colo. 2007); *EEOC v. Jillian's of Indianapolis, IN, Inc.*, 279 F. Supp. 2d 974, 982-83 (S.D. Ind. 2003); *EEOC v. E. Hills Ford Sales, Inc.*, 445 F. Supp. 985, 987-89 (W.D. Pa. 1978).  There was no investigation, determination, and conciliation of a failure to accommodate claim as to Mr. Turner.  Accordingly, GBMC is entitled to a summary judgment of the EEOC's failure to accommodate claim.

## IV.    GBMC WAS NOT OBLIGATED UNDER THE ADA TO REASSIGN MR. TURNER.

The EEOC claims that GBMC was required to, among other things, reassign Mr. Turner to a vacant position as a reasonable accommodation.  GBMC's GLOA policy states that GBMC "does not guarantee a position will be available for an employee returning from general leave. The returning employee will be considered for available vacancies for which he/she qualifies upon release to return to work."  See Ex. 9.  Under the ADA, an employer is not obligated to reassign an employee on leave.  *See Crano v. Graphic Packaging Corp.*, 65 Fed. Appx. 705, 708-09 (10th Cir 2003).  Mr. Turner was not an active employee while on general leave and was not entitled to be treated as such for ADA purposes when he was medically cleared to return to work.

In *Crano*, the plaintiff, a packer inspector in one of the defendant's plants, took indefinite medical leave. Under his employer's leave policies, his employment status with the company ended when his absence from work extended beyond a year. When he returned to work seeking reinstatement to his old position or reassignment to another position. Crano was informed that the position had been eliminated and that he was no longer an employee. He was invited to apply for any other available position on the same basis as any other non-employee applicant. Crano filed suit on the grounds that his former employer's actions and policies violated the ADA.

In granting summary judgment in favor of the employer, the court held that Crano's loss of current-employment status and the attendant prerogatives of a current employee was fatal to his claim for accommodation by reassignment. *Id*. at 708. In so holding, the court noted that it

> took pains in [*Smith v.*] *Midland Brake*[, *Inc*., 180 F.3d 1154, 1174-75 (10th Cir. 1999)], to clarify a critical distinction between an employer's particularized, affirmative duty to accommodate a disabled employee by reassignment to a vacant position and an employer's broader, neutral duty simply to consider job applicants without discrimination based on disability. . . The ADA secures the latter guarantee for the workforce at large, whereas the former is 'one of the forms of reasonable accommodation specifically mentioned by the [ADA] to be utilized if necessary and reasonable to keep an existing disabled employee employed by the company." To qualify for job reassignment – which bypasses the normal hiring process – "the person must therefore be an existing employee."

*Id*. at 708-09. *See also Johnson v. Otter Tail County*, 2001 WL 664217, *2 (8th Cir. 2001) (affirming ruling that employer had no continuing duty to accommodate employee by reassigning her to a vacant position when her employment relationship had ended at the end of her FMLA leave).

The court in *Crano* noted that the plaintiff's request for reassignment presupposed the employment status he had lost while on extended leave. *Crano,* 65 Fed. Appx. at 709. The court added that the employer complied with the ADA in denying the request for reassignment and telling Crano that he could apply for available positions on the same basis as any other non-

employee applicant. *Id.* The EEOC's claim here presupposes that Mr. Turner was a current

employee win 2006 when he sought reassignment within GBMC during his leave that began in

January 2005.

Mr. Turner was not an active employee while on leave – as made clear by GBMC's

policies regarding GLOA. Mr. Turner's employment status was changed to LOA on the first day

of his general leave. *See* Ex. 9, ¶ II.C. Unlike active employees, Mr. Turner did not accrue any

sick, vacation, or holiday hours while on unpaid leave. *Id.* at ¶ III.H.2. Mr. Turner continued to

receive his health benefits, "as if [he] continued to be actively employed." *See* Ex. 9, ¶ I.1. The

provision of health benefits did not confer active employment status on Mr. Turner. Indeed, the

logical conclusion to be drawn from that provision is that except for the provision of health

benefits an individual on leave is treated no differently than a non-employee. Thus, Mr. Turner

lost the status and attendant prerogatives of a current employee when he took a leave of absence.

That loss of status is fatal to his claim for accommodation by reassignment. Accordingly, the

EEOC's ADA claim in that regard must fail.

### V. THE EEOC'S CLAIM FOR PUNITIVE DAMAGES FAILS AS A MATTER OF LAW AS THE EEOC CANNOT SHOW ACTUAL MALICE OR RECKLESS INDIFFERENCE TO MR. TURNER'S RIGHTS.

The EEOC's complaint alleges that GBMC acted with malice or with reckless

indifference to the federally protected rights of Mr. Turner and seeks punitive damages. Cmpl.

¶ 13. To prove an entitlement to punitive damages on an ADA claim, a plaintiff must show that

the employer acted with the requisite state of mind – that is, that it "engaged in a discriminatory

practice . . . with malice or reckless indifference to the federally protected rights of [the

plaintiff]." 42 U.S.C. § 1981(a)(b)(1). The statutory requirement of malice or reckless

indifference may be proven in the alternative. *Kolstad v. American Dental Assn.*, 527 U.S. 526,

536 (1999).  Proof of "actual malice" is unnecessary for a finding of punitive damages liability if the plaintiff is able to prove "recklessness in its subjective form."  *Id.* (citing *Smith v. Wade*, 461 U.S. 30, 45-48 (1983)).  The Supreme Court in *Kolstad* noted that to prove such recklessness, a plaintiff must establish that his employer "at least discriminate[d] in the face of a perceived risk that its actions [would] violate federal law."  *Id.*  The Supreme Court further explained that, "in the punitive damages context, an employer may not be vicariously liable for the discriminatory employment decisions of managerial agents where these decisions are contrary to the employer's good-faith efforts to comply with" the applicable federal law.  *Id.* at 545.  (Internal quotation marks omitted).

The EEOC cannot show malice on the part of GBMC or reckless indifference to the federally protected rights of Mr. Turner.  Indeed, the undisputed record is that GBMC not only made good faith efforts to comply with the ADA and Title VII, it granted accommodations to Mr. Turner that were unprecedented at GBMC.  Owen Dep. at 32.  GBMC extended Mr. Turner's general leave of absence against the recommendation of its Director of Human Resources.  *See* Deposition of Carolyn Roberts, an excerpt of which is attached as ***Exhibit 21***, at 29.  Another member of the Human Relations Department, Diane Owen, tried to assist Mr. Turner in getting a job even though it was not her job responsibility.  Moreover, Mr. Turner declined pursuing at least one position that GBMC's Human Resources Department suggested to him.  Owen Dep. at 60.  *See also* Roberts Dep. at 53 ("Generally, everyone in the hospital wanted to try and find a way to get employment for [Mr. Turner]."); Deposition of Etna Weinhold attached as ***Exhibit 22***,  at 95 (". . . Carolyn Roberts was definitely an advocate to help find something to facilitate Mike's return to work.").

GBMC's employees abided by and went beyond the ADA's and Title VII's requirements in trying to obtain employment for Mr. Turner. GBMC's stated policy, which is posted in various places throughout the GBMC facilities, is that it does not discriminate based on disability. Owen Dep. at 23-25; GBMC Equal Employment Opportunity policy attached as *Exhibit 23*. GBMC's employees made good faith efforts to find Mr. Turner employment at GBMC both before and after his extended leave was exhausted and his official employment terminated. Quite simply, there is no evidence to support a claim of actual malice or a claim of reckless indifference to Mr. Turner's rights. Indeed, the EEOC cannot point to any evidence that GBMC discriminated against Mr. Turner. Accordingly, the EEOC's claim of punitive damages must fail.

## CONCLUSION

For the reasons set forth above, Greater Baltimore Medical Center, Inc., respectfully requests that the Court grant it summary judgment on all claims brought by plaintiff Equal Employment Opportunity Commission.


<u>            /S/                                            </u>
Lawrence J. Quinn, Bar No. 07545
  Tydings & Rosenberg LLP
  100 East Pratt Street, 26th Floor
  Baltimore, Maryland  21202
  Telephone:  410.752.9700
  Facsimile:  410.727.5460
  lquinn@tydingslaw.com

*Attorneys for Greater Baltimore Medical Center, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 12, 2010, the foregoing Memorandum in Support of Defendant Greater Baltimore Medical Center, Inc's Motion for Summary Judgment was filed and served via the Court's ECF System on:

Maria Salacuse, Esquire
U.S. Equal Employment Opportunity Commission
City Crescent Building
10 South Howard Street, 3rd Floor
Baltimore, Maryland  21201

/S/
Lawrence J. Quinn