**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

EQUAL EMPLOYMENT OPPORTUNITY            *
COMMISSION
                                        *
             Plaintiff
                                        *
      v.                                     Case No. 1:09-CV-2418 RDB
                                        *
GREATER BALTIMORE MEDICAL
CENTER, INC.                            *
             Defendant.                 *

*     *     *     *     *     *     *     *     *     *     *     *     *

**REPLY MEMORANDUM IN SUPPORT OF GREATER BALTIMORE**
**MEDICAL CENTER, INC.'S MOTION FOR SUMMARY JUDGMENT**
**AND MEMORANDUM IN OPPOSITION TO THE EEOC'S**
<u>**CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT**</u>

# TABLE OF CONTENTS

STATEMENT OF FACTS ................................................................................................ 1

ARGUMENT IN REPLY TO EEOC'S OPPOSITION TO MOTION FOR
SUMMARY JUDGMENT .......................................................................................... 8

   I.  The Contradictory Factual Statements That Mr. Turner (1) is Disabled and
      Unable to Work and (2) is Able to Work Despite His Disability Judicially
      Estop the EEOC's ADA Claim ............................................................................. 8

   II.  The EEOC Does Not Dispute That Mr. Turner Never Asked For An
       Accommodation ................................................................................................... 13

   III.  The EEOC Did Not Exhaust Its Administrative Remedies; There Was No
        Charge, Investigation, Determination, or Conciliation of a Failure to
        Accommodate Claim ............................................................................................ 14

   IV.  The EEOC Has Proffered No Evidence That GBMC Acted With Actual
        Malice or Reckless Indifference to Mr. Turner's Rights ............................... 16

OPPOSITION TO EEOC'S MOTION FOR SUMMARY JUDGMENT ............................... 18

   V.  The EEOC Cannot Prevail on Either Its Reasonable Accommodation or
       Wrongful Discharge Claims ............................................................................... 18

      1.  Mr. Turner was not Qualified for the Unit Secretary Position or,
         Alternatively, it is a Question of Fact Whether Mr. Turner was
         Qualified ........................................................................................................ 19

      2.  Mr. Turner Never Requested an Accommodation and Therefore GBMC
         Cannot, as a Matter of Law, Have Failed to Reasonably Accommodate
         Mr. Turner ..................................................................................................... 20

      3.  GBMC Was Not Required to Reassign Mr. Turner and Did Not Fail to
         Accommodate Him by Requiring That He Compete For Vacant
         Positions ........................................................................................................ 22

      4.  Mr. Turner Was Not Discharged Because of His Disability ................................... 26

   VI.  The EEOC Is Not Entitled To Summary Judgment On GBMC's Direct
        Threat Defense ..................................................................................................... 26

   VII.  The EEOC Has Not Met Its Burden of Establishing a Prima Facie Case
         of Disability Discrimination ............................................................................... 28

CONCLUSION ........................................................................................................... 32

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **EQUAL EMPLOYMENT OPPORTUNITY COMMISSION** | * | |
| | * | |
| **Plaintiff** | | |
| | * | |
| **v.** | | **Case No. 1:09-CV-2418 RDB** |
| | * | |
| **GREATER BALTIMORE MEDICAL CENTER, INC.** | * | |
| | | |
| **Defendant.** | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

### REPLY MEMORANDUM IN SUPPORT OF GREATER BALTIMORE MEDICAL CENTER, INC.'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN OPPOSITION TO THE EEOC'S CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT

Greater Baltimore Medical Center, Inc. ("GBMC"), defendant, by counsel, files this memorandum of law as a reply in support of its motion for summary judgment and as an opposition to the Equal Employment Opportunity Commission's ("EEOC") cross motion for partial summary judgment and states as follows:

### STATEMENT OF FACTS[1]

Michael Turner stated to the Social Security Administration ("SSA") in his December 29, 2005, application for Disability Insurance Benefits ("SSDI") that "I became unable to work because of my disabling condition on January 15, 2005" and that "I am still disabled." *See* Exhibit 2 to GBMC Memorandum in Support of Motion for Summary Judgment ("GBMC Memo"). Mr. Turner further agreed to notify the SSA if his medical condition improved so that

---

[1]  GBMC sets forth additional facts to place the EEOC's incomplete characterizations of deposition testimony in context and to refute allegedly undisputed facts put forth by the EEOC in its memorandum in support of its cross motion for summary judgment and its opposition to GBMC's motion for summary judgment ("EEOC Memo").

he would be able to work, even though he had not returned to work.  *Id.*  Mr. Turner was awarded benefits on January 22, 2006, based on a finding that he became disabled on January 15, 2005.  GBMC Memo Ex. 6.  The notice stated that the SSA made the decision on Mr. Turner's claim based on the information he supplied and that if the information changes, it was Mr. Turner's responsibility to report those changes to the SSA.  *Id.*  Mr. Turner has continuously received SSDI benefits from the date of the award, including retroactive payments.  Mr. Turner first filed a charge of discrimination on February 6, 2007.  GBMC Memo Ex. 18.

The EEOC attempts to whitewash Mr. Turner's failure to notify the SSA of his purported ability to work by claiming that Mr. Turner is actively participating in the SSA's Ticket to Work Program.  Mr. Turner did not obtain a Ticket to Work until January 2009.  EEOC Memo Ex. 53.  A Ticket to Work does not inform the SSA that he is able to work.  *Id.*  It is undisputed that Mr. Turner never notified the SSA that he was able to work.  GBMC Memo Ex. 7.  Moreover, Mr. Turner was aware of the restriction against working and receiving SSDI.  The EEOC interviewed Mr. Turner in January 2009 and noted that Mr. Turner received a SSDI check, each month, but if he found employment he would probably have disability stopped.  *See* EEOC Interview Notes attached as Exhibit 1.  In March 2010, Mr. Turner had a discussion with his employment consultant about how much money he could make without losing his SSDI.  *See* Deposition of Jacob Frelick, attached as Exhibit 2, at 152, l. 21 – 154, l. 8; DORS Report attached as Exhibit 3 at 3/24/10 entry.

The EEOC also misstates GBMC's policies and practices.  GBMC does not distinguish between work-related and non-work related medical conditions when accommodating employees as claimed by the EEOC.  EEOC Memo at 2 n. 1.  The EEOC distorts the testimony of Karen Dickens ("Dickens"), a nurse in GBMC's Employee Health Department, who was testifying as

to the different treatment afforded injuries under Workers' Compensation laws.  Deposition of
Karen Dickens, attached as Exhibit 4, at 24, l. 15 – 25, l. 19; 27, l. 22 – 30, l. 7.  Moreover,
Dickens, who was not a corporate designee of GBMC, made clear at deposition that
accommodating employees was handled between the Employee Relations Department and the
employee's supervisor.  *Id.* at 17, l. 15 - 18.  Indeed, in December 2005, when Mr. Turner's
General Leave of Absence ("GLOA") was nearing its end, his supervisor, Etna Weinhold,
requested of Diane Owen of the Employee Relations Department, that Mr. Turner's be extended
so that he could retain his benefits and to assist him in his recovery.  *See* 12/19/05 email attached
as Exhibit 5; deposition transcript of Etna Weinhold, attached as Exhibit 6, at 85, l. 12 – 87, l. 12.

The EEOC also downplays the duties of a unit secretary in the post-partum unit.  EEOC
Memo at 2-3.  The supervisor of that unit likened the position to an air traffic controller, with
continuous multitasking and multi-levels of communication.  Weinhold DP (Ex. 6) at 34, l. 3 –
35, l. 5; 51, l. 14-17.  One of the key duties is facilitating a stat need for a nurse, including a
situation where a baby was choking, which according to Ms. Weinhold, occurred approximately
three times a month on the post-partum unit.  *Id.* at 34, l. 15 – 21; 133, l. 12 – 17.  Mr. Turner
described one of the major functions of the job of unit secretary as "notifying nursing if infant
emergency on unit."  GBMC Memo Ex. 16 at EEOC-0027.  He also told the EEOC investigator
that as a unit secretary he may be required to make an emergency phone call if, for example, a
baby could not breathe , and that sometimes he was required to take a patient to the emergency
room because of a fall.  Ex. 1 at EEOC-00101.

The EEOC claims that Mr. Turner was released by his physician, Dr. Nathan Rosenblum,
to return to work part-time on January 23, 2006, and again on February 28, 2006.  It is
undisputed that Dr. Rosenblum conducted, at best, a cursory examination of Mr. Turner in

clearing Mr. Turner to return to work.  The January 23, 2006, note allegedly releasing Mr.

Turner to work was based on a telephonic request from Mr. Turner to Dr. Rosenblum.  *See*

Deposition of Dr. Rosenblum attached as Exhibit 7, at 44, l. 2 – 16.  Mr. Turner had been last

seen by Dr. Rosenblum on January 13, 2006, for an examination of an infection in Mr. Turner's

leg.  That examination consisted of observing the leg for signs of a weeping wound, and touching

the leg for hardness and heat and pain.  *Id.* at 45, l. 8 – 17.  Dr. Rosenblum did not discuss the

unit secretary position with Mr. Turner or ask Mr. Turner if there were any limitations on what

he felt he could do.  *See* Deposition of Michael Turner attached as Exhibit 8, at 64, l. 19 – 21; 65,

l. 10.  Dr. Rosenblum did not test nor ask Mr. Turner about his ability to stand for long periods of

time, nor inquire into whether he had difficulties walking, or restrictions on lifting.  *Id.* at 66, l.

10 - 21.

    It is also uncontroverted that Dr. Rosenblum continued the charade of examining Mr.

Turner for purposes of clearing him to return to work when he, or Mrs. Turner, depending on

whose testimony one reads, completed a medical evaluation form that was not based on any

objective testing by Dr. Rosenblum.  *See* GBMC's Memo at 5 n.1.  Moreover, Dr. Rosenblum

did not ask for or review a copy of the unit secretary job description, or discuss with anyone the

duties of the position to which he was purporting to clear Mr. Turner to return.

    Mr. Turner was not released to return to work when he obtained Dr. Rosenblum's

signature on the Return to Duty form.  Under GBMC's General Leave of Absence Policy

("GLOA"), Mr. Turner was required to receive a fitness for duty evaluation from GBMC's

Employee Health Department.  GBMC Memo Ex. 9, p. 6.  Dr. Paul Valle, GBMC's employee

health doctor examined Mr. Turner on two occasions.  Dr. Valle's view, in contrast to Dr.

Rosenblum's was not based on the suggested findings of Mr. Turner's mother, but on the two

separate examinations and evaluations of Mr. Turner that included testing Mr. Turner's strength, dexterity, ability to lift, stand, walk, and multitask.  See Deposition of Paul Valle attached as Exhibit 9, at 65, l. 16 – 66, l. 7; 72, l. 3 – 73, l. 16; 78, l. 21 – 79, l. 13; 115, l. 4 – 22.  Dr. Valle also discussed the requirements of the unit secretary position with members of the Employee Health Department, Karen Dickens and Larue Rawlings, and relied on his observations of unit secretaries at work.  *Id.* at 79, l. 14 – 22; 80, l. 11 – 16; Dickens DP (Ex. 4) at 50, l. 13 – 22.

The EEOC claims that thereafter, in contravention of GBMC's practice of reassigning employees as a reasonable accommodation without requiring the employee to compete, "Mr. Turner was required to apply for open positions."  EEOC Memo at 6.  The record is clear that GBMC's policy and practice is that employees returning from GLOA will be considered for available vacancies for which he qualifies upon release to work.  GBMC Memo Ex. 9; Deposition Transcript of Susan Hussey attached as Exhibit 10, at 184, l. 18 – 185, l. 2; Deposition Transcript of Diane Owen attached as Exhibit 11, at 34, l. 10 – 35, l. 11.  Employees with a disability who are not on GLOA and for whom GBMC is attempting to accommodate by reassigning to a vacant position are not required to compete for the position.  Hussey DP (Ex. 10) at 159 l. 12-18; 184 l. 13 – 186 l. 18.

Mr. Turner was cleared to return to work as a file clerk, but not as a unit secretary, by Dr. Valle on May 30, 2006.  It is undisputed that immediately before and after Dr. Valle cleared Mr. Turner to return to work full time that GBMC assisted Mr. Turner in obtaining employment at GBMC, in a position other than unit secretary.  Owen DP (Ex. 11) at 60, l. 2 - 11; *see also* Deposition of Larue Rawlings, attached as Exhibit 12, at 23, l. 7-15.  Mr. Turner, however, wanted to return as a Unit Secretary in the post-partum unit.  Rawlings DP (Ex. 12) at 14, l. 15 – l. 20.  Indeed, Mr. Turner believed that he was entitled to the post-partum unit secretary position

and that GBMC should have taken an existing unit secretary out of the position and placed him

in that position.  Turner DP (Ex. 8) at 153, l.6 – l. 20.  Mr. Turner also responded to the EEOC's

question about the relief or remedy he was seeking in filing a charge with the EEOC by stating

that "I want my old job back or equivalent – I want to return to work.  If not my old unit –

another unit secretary position."  *See* Remedy Information form attached as Exhibit 13 at EEOC-

0040.  Despite being told he was not cleared to return to work as a unit secretary, Mr. Turner

requested consideration as a unit secretary in the Surgical Intensive Care Unit ("SICU").  *See*

April 27, 2006, letter from M. Turner attached as Exhibit 14.  Mr. Turner also declined a file

clerk position in Dr. Hinton's office.  *Id*.  On June 9, 2006, after having been cleared by Dr.

Valle to return to work as a file clerk, Mr. Turner declined a float pool file clerk position.  *See*

6/9/06 email from K. Banks attached as Exhibit 15; Deposition of Kathryn Banks attached as

Exhibit 16, at 44, l. 2 – 18.

At the request of GBMC's Employee Relations Department, Mr. Turner was interviewed

by Jennifer Bolick for a file clerk position in a GBMC facility in Owings Mills, Maryland, in

June 2006.  Ms. Bolick determined that Mr. Turner was not the best candidate for the job

because he did not have a car and because she believed he would have trouble walking and

carrying files and in dealing with high and low cabinets.  Deposition of Jennifer Bolick attached

as Exhibit 17, at 21, l. 8 – 22, l. 12.  After the interview, the Employee Relations Department

asked Ms. Bolick and her supervisor if they could assign Mr. Turner only some of the duties of

the file clerk.  GBMC determined it was not fair to the other file clerks to only assign some of

the tasks to Mr. Turner.  *Id.* at 25, l. 9 – 26, l. 11.  The Employee Relations Department also

requested that Ms. Bolick contact Dr. Valle about Mr. Turner's ability to perform the file clerk

duties.  *Id.* at 26, l. 12 – 27, l. 22.  Dr. Valle indicated that for Mr. Turner's safety he could not

file documents if he needed to use a step stool.  Valle DP (Ex. 9) at 117, l. 9 – 118, l. 9; 119, l. 13 - 19; Bolick DP (Ex. 17) at 27, l. 16 – 19.

Ms. Bolick also asked Mr. Turner about his ability to file in low and high cabinets. Bolick DP (Ex. 17) at 22, l. 9–15.  Mr. Turner stated that he could do it and did not ask for any assistance or accommodation.[2]  *Id.*  Mr. Turner testified, however, that he declined the position in Dr. Hinton's office because the position required a step ladder to file and he was afraid he would fall and hurt himself carrying charts on the step ladder.  Turner DP (Ex. 8) at 116, l. 14 – 117, l. 5.  Mr. Turner told the EEOC investigator that he interviewed for the file clerk position in the Emergency Room, but there was too much walking and carrying and that he was afraid he would hurt himself.  Ex. 1 at EEOC-00101.  Mr. Turner also stated that GBMC knew that climbing ladders was not safe for him, especially wearing a leg brace.  Turner DP (Ex. 8) at 154, l. 2 - 7; *see also* 11/06 Turner letter attached as Exhibit 20 at EEOC-0013.  Remarkably, Dr. Rosenblum never placed any restrictions on Mr. Turner, including climbing steps or ladders, Turner DP (Ex. 8) at 124, l. 10 – 18, although he testified that given Mr. Turner's left leg limitation it would be unsafe for him to climb a ladder or stool.  Rosenblum DP (Ex. 7) at 78, l. 9 – 14.

---

[2]  *See* GBMC Memo at 5; *see also* Deposition of Margaret Turner attached as Exhibit 18, at 130, l. 15-22.  "Q. Are you aware of any accommodations that Michael needed to return to work at GBMC?  A. No.  Q. Are you aware of any accommodations that he ever asked for?  A. No.  In fact, I asked him did you ever ask for any assistance or anything that would help you at work and he said no."; EEOC Discipline Questionnaire attached as Exhibit 19, at p. 7 (Mr. Turner stated under penalty of perjury:  "I am physically handicapped – although I have no special accommodations needed."); EEOC Interview Notes, Ex. 1 at EEOC-00102 ("He would be able to do his job with no assistance.").

**ARGUMENT IN REPLY TO EEOC'S OPPOSITION TO**
**MOTION FOR SUMMARY JUDGMENT**

I.     **The Contradictory Factual Statements That Mr. Turner (1) is Disabled and Unable**
       **to Work and (2) is Able to Work Despite His Disability Judicially Estop the EEOC's**
       **ADA Claim.**

The Supreme Court in *Cleveland v. Policy Management Systems Corporation*, 526 U.S.

795, (1999), made clear that a party who asserts that he is disabled and unable to work for

purposes of SSDI and also claims that he is a qualified individual with a disability who, with or

without reasonable accommodation, can perform the essential functions of his job, must proffer a

sufficient explanation for the inconsistency.  The EEOC proffers several explanations, each of

which is unavailing.

First, the EEOC contends Mr. Turner made no statements in conjunction with his SSDI

application that are inconsistent with this lawsuit.  It is undisputed that on December 29, 2005,

Mr. Turner stated that "I became unable to work because of my disabling condition on January

15, 2005" and that "I am still disabled."  GBMC Memo Ex. 2.  Those statements were not and

are not the "context-related legal conclusions," namely "I am disabled for purposes of the Social

Security Act," that the Supreme Court considered in *Cleveland*.  526 U.S. at 802.

In *Cleveland*, the Supreme Court noted that "an ADA suit claiming that the plaintiff can

perform her job *with* reasonable accommodation may well prove consistent with an SSDI claim

that the plaintiff could not perform her own job (or other jobs) *without* it."  *Id.* at 803.  Mr.

Turner, however, unlike the plaintiff in *Cleveland*, has never claimed to the SSA, or anyone for

that matter, that he could not perform his unit secretary job (or other jobs) without a reasonable

accommodation.  The plaintiff in *Cleveland*, unlike Mr. Turner, alleged that she requested, but

was denied, accommodations.  Mr. Turner's factual statements to the SSA that he is disabled and

unable to work, which have never been retracted, explained, or qualified before the SSA, despite Mr. Turner's sworn obligation to tell the SSA if he is able to work, cannot be reconciled with the assertion in this lawsuit that he is able to work.

Similarly, the Fourth Circuit and District of Maryland authority cited by the EEOC offers it no help.  In *EEOC v. Stowe-Pharr Mills, Inc.*, 216 F.3d 373, 379 (4th Cir. 2000), the plaintiff told the SSA intake officer that she could work with reasonable accommodation, but the intake officer advised her that because the claimant was not required to refer to the possibility of reasonable accommodation in applying for SSDI benefits, the claimant should state that she was unable to work due to her disability.  Moreover, in *Stowe-Pharr Mills*, the EEOC proffered evidence to show that the claimant was able to work with the reasonable accommodation she had requested.  Mr. Turner did not request a reasonable accommodation and has never asserted that he needed a reasonable accommodation to perform the duties of a unit secretary.

The decision in *EEOC v. Denny's, Inc.*, WDQ-06-2527 2010 WL 2817109 (D. Md. July 16, 2010), also does not support the EEOC's position.  In *Denny's*, this Court found that two explanations offered by the EEOC to reconcile the contradiction between the ADA claim and the representations in the claimant's SSDI application were sufficient.  The EEOC first argued that there was no "temporal overlap" between the ADA claim and the SSDI application because the SSDI benefits were not approved until almost a year after she was terminated.  *Id.* at *8.  Judge Quarles noted that "if an individual has merely applied for, but has not been awarded, SSDI benefits, any inconsistency in the theory of the claims is of the sort normally tolerated by our legal system."  *Id.* (quoting *Cleveland*, 526 U.S. at 805.)

In *Fox v. General Motors Corporation*, 247 F.3d 169, 178 (4th Cir. 2001), the Fourth Circuit held that the plaintiff had proffered a sufficient explanation for an apparent contradiction

between his ADA claim and workers' compensation claims because the claims did "not overlap temporally" and he could have continued work with his requested reasonable accommodation. The ADA claim concerned a period from October 1994 to mid-August 1995, and the workers' compensation claim was for the period beginning in mid-August 1995. *Id.*

Unlike the claimant in *Cleveland*, *Fox*, and *Denny's*, Mr. Turner applied for and received benefits before he was terminated by GBMC. Thus, there was a temporal overlap between Mr. Turner's application and receipt of SSDI benefits and the ADA claim that he was able to work. That is precisely the type of factual, not theoretical, inconsistency not tolerated by the legal system.[3]  *See Simon v. Safelite Glass Corp.*, 128 F.3d 68, 73-74 (2nd Cir. 1997) (SSDI applicant who was required to notify SSA if he went to work and failed to do so is inconsistent with claim under Age Discrimination in Employment Act ("ADEA") that he was able to work); *see also EEOC v. Winslow Mem. Hosp.*, No. CV04-2060, 2006 WL1663488 (D. Ariz., June 12, 2006) (statement on SSDI application that claimant was unable to work because of disabling condition on August 1, 2003, and for which she received benefits, was inconsistent with ADA lawsuit in which EEOC alleged claimant was qualified for her position as of August 3, 2003); *Detz v. Greiner Indus., Inc.*, 346 F.3d 109, 113 119 (3rd Cir. 2003) (In ADEA claim, summary judgment in favor of defendant employer upheld when claimant who applied for and was currently receiving SSDI benefits based on statement of inability to work could not reconcile ADEA claim that he could work.)

In *Denny's*, the EEOC also argued that the claimant, in applying for SSDI benefits did not mean to imply that she could not work with reasonable accommodation. *Denny's*, 2010 WL

---

[3]  The Supreme Court in *Cleveland* twice noted that its decision leaves the law with respect to purely factual contradictions where it found it.  526 U.S. at 802, 805.

2817109 at *8.  The Court held, in denying defendant's motion for summary judgment, that claimant's present claim that she could have worked with reasonable accommodation is reconcilable with the claim for SSDI.  *Id.*  The EEOC in this case cannot proffer that Mr. Turner did not mean to imply that he could not work with a reasonable accommodation when he applied for SSDI benefits.  Indeed, the uncontroverted record is that Mr. Turner has always asserted that he did not and does not need an accommodation.[4]  Thus, the EEOC cannot reconcile Mr. Turner's factual inconsistencies.

Second, the EEOC argues that Mr. Turner consistently stated his intention to return to work and therefore there is no contradiction for it to explain.  The contradiction is between the statements "I am unable to work because of my disability" and "I am able to work."  Mr. Turner's intentions are irrelevant.  Mr. Turner did not agree to notify the SSA if his medical condition improved such that he *intended* to return to work.  Mr. Turner, whose reporting responsibilities were explained to him, agreed to notify the SSA if he was "able to work."  GBMC Memo Ex. 2.  His contradictory statements and application for, award, and receipt of SSDI benefits since January 2006, without notifying the SSA that "he is able to work" are the salient facts.

Finally, the EEOC claims that it cannot be judicially estopped by Mr. Turner's contradictory statement in his SSDI application that he is able to work because of its congressional mandate to enforce anti-discrimination statutes.  EEOC Memo at 33-35.  Tellingly, the EEOC cites no authority that permits it to bring a discrimination suit under the ADA on

---

[4]  The EEOC's reliance on *O'Brien v. Person Directed Supports, Inc.*, 09-02629, 2010 WL 3656066, *4 (E.D. Pa. Sept. 14, 2010), is inapposite.  In *O'Brien*, the claimant sought, but was denied, unemployment benefits before filing her ADA claim.  In addition, after her claim for benefits was denied, plaintiff requested an accommodation to enable her to continue working.  As noted above, Turner never requested an accommodation and he applied for and received, and continues to receive, SSDI before the EEOC filed suit on his behalf.

behalf of an individual whose factual statement contradicts the ADA claim and makes it impossible for the EEOC to prove an essential element of its claim.

The lone case relied upon by the EEOC involved a motion for leave to add an affirmative defense of judicial estoppel based on the ADA claimant's sworn statement in his application for SSDI benefits. *EEOC v. Autozone, Inc.*, No. 07-1154, 2009 WL 464574 (C.D. Ill. February 23, 2009). The magistrate judge recognized that the Seventh Circuit had not ruled on the question of whether a claimant's sworn factual statements to the SSA barred the EEOC from pursuing an ADA claim and denied the motion on the grounds that the affirmative defense of judicial estoppel was futile.

It is clear that in the Fourth Circuit asserting judicial estoppel against the EEOC in the face of a claimant's prior sworn statement to the SSA is not futile. In *Stowe-Pharr Mills*, the Fourth Circuit, in reviewing a grant of summary judgment against the plaintiff EEOC, addressed the key component of the EEOC's claim. The Fourth Circuit noted that for the EEOC to prove its case it must show, among other things, that the claimant was a qualified individual for the employment at question. 216 F.3d at 377. The court held that the claimant is required to proffer a sufficient explanation for any apparent contradiction between the SSDI and ADA claims, but *Cleveland* does not mandate an analysis under the doctrine of judicial estoppel; the standard summary judgment framework is used instead. *Id.* at 378. The Fourth Circuit pointed out that the *Cleveland* court said its decision did not disturb the law in the various circuits dealing with "purely factual contradictions" in summary judgment proceedings. *Id.*

This Court used the summary judgment standard in *Denny's*, and relied upon *Cleveland* and *Stowe-Pharr Mills*, in ruling that the EEOC's reasonable explanation of the contradiction between the ADA claim and the SSDI application were reconcilable. *Denny's*, 2010 WL

2817109 at *8.  While the EEOC's proffered explanations for the factual discrepancies in this case, unlike those in *Denny's*, are insufficient, the analytical framework is the same.  Thus, summary judgment is required against the EEOC when it cannot show that the claimant was a "qualified individual" when it fails to explain sufficiently the contradictory statements made in an ADA lawsuit and an SSDI application.  In *Winslow Memorial Hospital*, 2006 WL 1663488 at *9, the court granted summary judgment against the EEOC when the claimant could not sufficiently explain the inconsistency between her SSDI application that she was unable to work and the ADA claim that she was qualified to work.  The court held that the claimant was judicially estopped from pursuing her claim and noted that the "EEOC does not contend that it can assert claims on [claimant's] behalf when she is judicially estopped from asserting them.  Judicial estoppel therefore bars its claims as well."  *Id.*

## II.     The EEOC Does Not Dispute That Mr. Turner Never Asked For An Accommodation.

The EEOC's opposition does not dispute the argument made by GBMC that the EEOC cannot establish a failure to accommodate claim because Mr. Turner never requested an accommodation.  GBMC Memo at 11-13.[5]  That is not surprising, however, given that the EEOC's Enforcement Guidance on Reasonable Accommodation and Undue Hardship ("EEOC Guidance") states that "[a]s a general rule, the individual with a disability – who has the most knowledge about the need for reasonable accommodation – must inform the employer that an accommodation is needed."  *See* http://www.eeoc.gov/policy/docs/accommodation.html at Question 40.  According to the EEOC Guidance, if an employee has a disability that prevents the employee from requesting a reasonable accommodation the employer should initiate the

---

[5]  To the extent that the EEOC's memorandum in support of motion for summary judgment addresses GBMC's arguments, GBMC addresses those points in its opposition to the EEOC's motion for summary judgment.

reasonable accommodation interactive process without being asked.  *Id.*  While the EEOC has never contended that Mr. Turner has a disability that prevents him from requesting a reasonable accommodation, the EEOC Guidance is illuminating.  It states that if, in response to the employer's initiation of the interactive process, "the individual with a disability states that s/he does not need a reasonable accommodation, the employer will have fulfilled its obligation."  *Id.*

Mr. Turner never stated that he needed a reasonable accommodation.  He completed EEOC questionnaires under the penalty of perjury in which he stated he did not request an accommodation and did not need one.  *See* GBMC Memo Ex. 13.  He testified to the same effect. *See* Turner DP (Ex. 8) at 161, l. 22 – 162, l. 16.  Mr. Turner's mother confirmed that Mr. Turner never asked for or needed an accommodation.  M. Turner DP (Ex. 18) at 130, l. 15 - 22.  Thus, GBMC has fulfilled its obligations.

## III.    The EEOC Did Not Exhaust Its Administrative Remedies; There Was No Charge, Investigation, Determination, or Conciliation of a Failure to Accommodate Claim.

The EEOC's standing to sue in federal court requires administrative exhaustion.  *EEOC v. American Nat'l Bank*, 652 F.2d 1176, 1184-85 (4th Cir. 1981).  "As with individual claim, the requirement that the EEOC exhaust administrative remedies serves the same dual purpose: providing adequate notice to a defendant employer of the nature of the charges against it and providing the opportunity to resolve all charges through conciliation."  *EEOC v. Wal-Mart Stores, Inc.*, 576 F. Supp. 2d 1240, 1247 (D. N.M. 2008) (citing *EEOC v. Outback Steak House of Fla., Inc.*, 520 F. Supp. 2d 1250, 1263 (10th Cir. 2007) and *Am. Nat'l Bank*, 652 F.2d at 1185).  The EEOC does not refute that there was no charge filed by Mr. Turner of a failure to accommodate.  The EEOC never notified GBMC that it determined that GBMC failed to accommodate Mr. Turner.

Instead, the EEOC argues that its present claim of reasonable accommodation is necessarily subsumed within Mr. Turner's unlawful discharge and failure to rehire claims.  It also argues that because the ADA prohibits disability discrimination and "discriminate" includes not making reasonable accommodations, the EEOC "had to investigate the claim of reasonable accommodation."  EEOC Memo at 43-44.

There was no reasonable accommodation claim.  Moreover, simply because someone alleges disability discrimination under the ADA it does not mean that it is a failure to accommodate claim.  Under the ADA, the term "discriminate against a qualified individual on the basis of disability" includes seven subparts, only one of which deals with reasonable accommodation.  42 U.S.C. §12112(b)(1) - (7).  Thus, reasonable accommodation is not necessarily subsumed within an unlawful discharge and failure to rehire claim.

The EEOC also claims that the specific accommodation at issue – denial of reassignment – is overtly addressed by the words "in any capacity."  EEOC Memo at 44.  Reassignment is a specific accommodation that should only be considered as a last resort.  *Bryant v. Better Business Bureau of Greater Maryland*, 923 F. Supp. 720, 742 (D. Md. 1996).  The EEOC does not explain how a respondent in an EEOC administrative proceeding can divine a claim of failure to accommodate by reason of a denial of reassignment from the phrase "it was unwilling to employ him in any capacity."

Finally, the EEOC claims that GBMC had notice of the reasonable accommodation claim because during the conciliation process GBMC's counsel addressed the various ways that GBMC attempted to accommodate Mr. Turner, including several job opportunities that Mr. Turner declined.  The EEOC cites an email from GBMC's counsel transmitted during settlement negotiations conducted in conjunction with the conciliation process.  EEOC Memo at 45, Ex. 57.

Those statements are inadmissible under Rule 408 of the Federal Rules of Evidence and should be stricken from the record. Notwithstanding that it is sharp practice to use a confidential conciliation document in opposing the summary judgment motion, the EEOC's argument does not withstand scrutiny. Simply because GBMC pointed out in the conciliation its efforts to reasonably accommodate Mr. Turner, in the face of his express disavowal of any needed accommodation, it does not follow that the EEOC ever determined or conciliated a claim that GBMC failed to accommodate Mr. Turner in violation of the ADA.

**IV.     The EEOC Has Proffered No Evidence That GBMC Acted With Actual Malice or Reckless Indifference to Mr. Turner's Rights.**

The EEOC does not argue actual malice. Instead, it argues that the failure of GBMC to reassign Mr. Turner evidences reckless indifference to Mr. Turner's rights. As shown in detail in section V.3, *infra*, at 22-26, GBMC did not discriminate against Mr. Turner and the EEOC cannot meet the first element of the test for punitive damages elucidated by the Fourth Circuit in *EEOC v. Federal Express Corporation*, 513 F.3d 360, 371 (4th Cir. 2008).

Moreover, the record is clear that GBMC undertook good faith efforts to comply with the ADA in dealing with Mr. Turner. GBMC implemented and enforced an anti-discrimination policy. GBMC had and has an Equal Employment Opportunity policy. *See* GBMC Memo Ex. 23. Diane Owen, an Employee Relations representative who worked in GBMC's Employee Relations Department from November 2002 to May 2007, testified that GBMC's policy was that it does not discriminate based on among other things, disability. Owen DP (Ex. 11) at 23, l.6 – 15. GBMC posts Equal Employment Opportunity posters in its main hospital and in all of its satellite facilities. *Id.* at 25, l. 9-19.

GBMC's corporate designee, Susan Hussey, the current Director of Employee and Labor Relations, who was the human resources compliance officer in 2006 and 2007, testified that GBMC has an anti-discrimination policy and a practice of accommodating employees. Hussey DP (Ex. 10) at 155, l. 8 – 157, l.6. Ms. Hussey, a lawyer, took employment discrimination courses in law school. Carolyn Roberts, the Human Resources Director at GBMC from 2005 to May 2007, testified to her 26 years in the human resources profession and her awareness with the ADA and her experience at a prior employee of providing a reasonable accommodation to a disabled employee. Deposition transcript of Carolyn Roberts attached as Exhibit 21, at 16, l. 2 – 18, l. 13.

Karen Dickens, who worked as an Employee Health Nurse at GBMC beginning January 2006 and became the Employee Health Manager in November 2007, testified to her understanding of the ADA and experience at GBMC with providing reasonable accommodation. She stated "that if somebody either requests verbally or in writing accommodations for disability, that we try to make the accommodations as much as reasonably possible without the undue hardship, and usually whatever that is, is that they have to still be able to perform the essential functions of their job." Dickens DP (Ex. 4) at 16, l. 2-9. The Employee Health Department would learn what accommodation the employee was requesting and convey that information to the Employee Relations Department, which handled the request for accommodation. *Id.* at 17, l. 19 – 19, l. 1.

Although Mr. Turner never requested a reasonable accommodation, the Employee Health Department advised the Employee Relations Department of the restrictions Dr. Valle placed on Mr. Turner and attempted to find positions for Mr. Turner. *Id.* at 19, l. 5–16. The other Employee Health nurse working at GBMC in 2006 corroborated Ms. Dickens's testimony about

the reasonable accommodation procedures at GBMC and GBMC's attempts to locate a position for Mr. Turner.  *See* Rawlings DP (Ex. 12) at 12, l. 21 – 13, l. 15; p. 16, l. 21 – 17, l. 1; p. 23, l. 7-15.  The in-house recruiter at GBMC further confirmed the Employee Relations Department's process for reasonably accommodating employees and its efforts to place Mr. Turner.  Banks DP (Ex. 16) at 38, l. 6-15; p. 51, l. 8 – 52, l. 2; p. 52, l. 7-16; p. 53, l. 14-20.

Mr. Turner turned down at least two positions that GBMC made available to him as possible jobs within GBMC.  Mr. Turner declined to apply.  *See* Exs. 14 and 15.  GBMC extended Mr. Turner's GLOA an additional six months to enable him to retain health benefits and assist him in returning to work at GBMC.  *See* Ex. 5; Weinhold DP (Ex. 6) at 85, l. 12 – 87, l. 12.  Because of Mr. Turner's failure to request an accommodation and his insistence that he could perform the unit secretary position without accommodation, GBMC was not required to seek a reasonable accommodation for Mr. Turner.  Nevertheless, the record is replete with GBMC's good faith efforts to accommodate Mr. Turner.

Where, as here, an employer has adopted an organization-wide Equal Employment Opportunity policy and engaged in undisputed efforts to implement those policies, punitive damages are precluded.  *See Bryant v. Aiken Reg'l Med. Ctrs. Inc.*, 333 F.3d 536, 548-49 (4th Cir. 2003), *cert. denied* 157 L. Ed. 2d 891 (2004).  Accordingly, GBMC is entitled to summary judgment on the punitive damages claim.

**OPPOSITION TO EEOC'S MOTION FOR SUMMARY JUDGMENT**

**V.     The EEOC Cannot Prevail on Either Its Reasonable Accommodation or Wrongful Discharge Claims.**

The EEOC does not address Mr. Turner's failure to request an accommodation or explain what accommodation GBMC refused to make.  Those deficiencies, along with the EEOC's

failure to exhaust administrative remedies, are fatal to the EEOC's failure to accommodate claim. *See supra*, pp. 13-16. Notwithstanding those fatal deficiencies, GBMC will address the other fatal flaws in its summary judgment motion.

       **1.**       **Mr. Turner was not Qualified for the Unit Secretary Position or, Alternatively, it is a Question of Fact Whether Mr. Turner was Qualified.**

The EEOC contends that Mr. Turner could perform the essential functions of the unit secretary position with or without reasonable accommodation. It is beyond conceded that Mr. Turner did not ask for an accommodation and has steadfastly maintained that he did not need an accommodation. Thus, the relevant inquiry is whether Mr. Turner was a qualified individual *without* reasonable accommodation.

The EEOC's support for its claim that Mr. Turner was qualified to perform the essential functions of the unit secretary position are Dr. Rosenblum's statements that Mr. Turner could return to work with restrictions on January 23, 2006, and February 28, 2006, and without restrictions on May 15, 2006.[6] The EEOC does not dispute that GBMC's GLOA policy that required an individual returning from GLOA due to a serious health condition must provide medical certification that he is able to resume work and must receive a fitness for duty evaluation from the Employee Health Department is reasonable.

The alleged medical certification that Mr. Turner was able to resume work from Dr. Rosenblum was a fallacy. There is no evidence that Mr. Turner was qualified to act as a post-partum unit secretary. Dr. Rosenblum did not discuss the unit secretary position with Mr. Turner, did not test Mr. Turner's physical abilities and limitations, nor inquire into whether Mr.

---

[6] The EEOC also cites the report of its proffered expert, Daniel Rappucci, (EEOC Memo at 12), but the citations to Mr. Rappucci's report only repeat Dr. Rosenblum's conclusions. There is no probative value in a proffered expert simply regurgitating the conclusion of Mr. Turner's personal doctor.

Turner had any difficulties walking or lifting.  Turner DP (Ex. 8) at 66, l. 10 - 21.  Dr. Rosenblum signed the medical restriction form dated February 28, 2006, that was either completed by Mrs. Turner or completed based on unsubstantiated information provided by Mrs. Turner.  *See* GBMC Memo at 5 n. 5; Rosenblum DP (Ex. 7) at 94, l. 2 – 100, l. 22; M. Turner DP (Ex. 18) at 76, l. 4 – 77, l. 11.  Dr. Rosenblum conceded that it is not his practice to rely upon what the mother of the patient says about the condition of the patient in completing return to work forms, Rosenblum DP (Ex. 7) at 101, l. 10 -13, yet that it was what he did in Mr. Turner's situation.  Thus, the EEOC has not and cannot meet its burden that Mr. Turner was a qualified individual with a disability.

Assuming that the Court finds that the EEOC has met its burden, whether Mr. Turner was a qualified individual with a disability is a disputed question of fact that precludes summary judgment in favor of the EEOC.  Dr. Valle's considered view, based on actual examinations of Mr. Turner and inquiries into his physical abilities and limitations, as well as a current understanding of the duties of a unit secretary derived from his personal observation and information gleaned from his nursing staff, was that Mr. Turner was not qualified to perform the essential functions of the unit secretary position.[7]

### 2.    Mr. Turner Never Requested an Accommodation and Therefore GBMC Cannot, as a Matter of Law, Have Failed to Reasonably Accommodate Mr. Turner.

The EEOC does not dispute that an employee is precluded from bringing suit under the ADA for failure to accommodate if the employee has failed to inform the employer of his need

---

[7]  The EEOC has moved to exclude Dr. Valle's testimony as impermissible opinion testimony.  GBMC will not repeat here its opposition to EEOC's motion.  Suffice it to say that the "evaluation" allegedly performed by Dr. Rosenblum pales in comparison to the comprehensive examination and evaluation done by Dr. Valle and that if Dr. Valle's opinion as a percipient witness were excluded by the Court, then Dr. Rosenblum's opinion based on what Mrs. Turner told him would necessarily be excluded.

for a specific accommodation.  *See Tangires v. Johns Hopkins Hosp.*, 79 F. Supp. 2d 587, 597 (D. Md. 2000).  Generally, it is the responsibility of the individual with the disability to inform the employer that an accommodation is needed.  *Bryant*, 923 F. Supp. at 737 (citing EEOC regulations 29 C.F.R. § 1630.9); EEOC Guidance at Question 40.

The EEOC attempts to add a requirement that if a disabled employee does not request, does not want, and does not believe he needs an accommodation, the employer is obligated to provide an accommodation.  The authority cited by the EEOC does not support such a proposition.  Even the EEOC's Guidance recognizes that is not the law.

Mr. Turner's situation is not a case where an employee has a known mental illness that might prevent him from requesting an accommodation.  *See Bultemeyer v. Fort Wayne Cmty. Schs.*, 100 F.3d 1281, 1285-86 (7th Cir. 1996); *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 313-14 (3rd Cir. 1999).  Nor is this a case where there was ambiguity as to the nature of the desired accommodation and GBMC chose not to follow up or intentionally remained in the dark. *EEOC v. Sears, Roebuck & Co.*, 417 F.3d 789, 804 (7th Cir. 2005).  Here, there was no desired accommodation and the EEOC attempts to avoid the admissions by Mr. Turner that he did not request or need a reasonable accommodation by arguing that those admissions are consistent with the EEOC's argument that Mr. Turner could perform the post-partum unit secretary position without reasonable accommodation.  *See* EEOC Memo at 15 n. 15.  Mr. Turner's admissions, however, are inconsistent with and dispositive of the EEOC's argument that GBMC failed to accommodate or engage in an interactive process with Mr. Turner.

The EEOC's reliance on *Miller v. Illinois Department of Corrections*, 107 F.3d 483 (7th Cir. 1997), is equally unavailing.  In *Miller*, a disabled prison guard who was unable to perform all of her duties expressed to her employer that she still wanted to work for it so long as her

position came with pay comparable to the prison guard position.  107 F.3d at 486-87.  The

Seventh Circuit held that the employer had a duty to ascertain whether it had some job that the

employee might be able to fill, but it is not required to made such an accommodation when the

employee wants to remain, on her own terms, in the same job status that she had before she

became disabled when she is no longer qualified for the position.  *Id.*

Mr. Turner's situation is analogous.  Mr. Turner was not qualified for the unit secretary

position when he attempted to return from leave.  Mr. Turner, however, wanted to return to that

position on his own terms and believed he was entitled to be placed in that position even if

someone had filled it.  Rawlings DP (Ex. 12) at 14, l. 15 – l. 20; Turner DP (Ex. 8) at 153, l. 6 –

l. 20.  Mr. Turner told the EEOC "I want my old job back or equivalent – I want to return to

work.  If not my old unit – another unit secretary position."  Ex. 13 at EEOC-0040.  Despite

being told on March 31, 2006, that he was not cleared to work as a unit secretary, Mr. Turner

requested consideration as a unit secretary in the SICU on April 27, 2006.  Ex. 14.  Moreover,

Mr. Turner applied for unit secretary positions at GBMC ten times between March 2007 and

January 2009.  *See* Amended Interrogatory Answers attached as Exhibit 22, at 7-17.

Mr. Turner's single-mindedness in wanting to return as a unit secretary is further

evidenced by his refusal to consider two file clerk positions at GBMC in June 2006.  *See* Exs. 14

and 15.  Although GBMC tried to accommodate Mr. Turner, he refused.  The EEOC cannot be

now heard to contend that GBMC did not engage in an interactive process with Mr. Turner.

### 3. GBMC Was Not Required to Reassign Mr. Turner and Did Not Fail to Accommodate Him by Requiring That He Compete For Vacant Positions.

GBMC's GLOA policy states that there is no guarantee that an employee's position will

be held while on leave.  GBMC Memo Ex. 9 at III.B.3.  It further states that employees returning

from leave are considered for available vacancies for which they qualify upon release to return to work. *Id.* at III.L.3. GBMC's policy also requires individuals returning from leave to go through the hiring process and compete with any other candidates for the position. Hussey DP (Ex. 10) at 193, l. 16 – 194, l. 6.

The Fourth Circuit has held that "the ADA's reasonable accommodation standard does not require an employer to abandon a legitimate and non-discriminatory company policy." *EEOC v. Sara Lee Corp.*, 237 F.3d 349, 353-54 (4th Cir. 2001). GBMC had a legitimate and non-discriminatory policy of hiring the most qualified applicant and requiring all applicants, including those returning from leave, to compete for a vacant position. "[T]he ADA is not an affirmative action statute and does not require an employer to reassign a qualified disabled employee to a vacant position when such a reassignment would violate a legitimate nondiscriminatory policy of the employer to hire the most qualified candidate." *Huber v. Wal-Mart Stores*, 486 F.3d 480, 483 (8th Cir. 2007); *see also Daugherty v. City of El Paso*, 56 F.3d 695, 700 (5th Cir. 1995) ("[W]e do not read the ADA as requiring affirmative action in favor of individuals with disabilities, in the sense of requiring that disabled persons be given priority in hiring or reassignment over those who are not disabled").

The District Court in the Northern District of Ohio recently pointed out that the Fifth, Sixth, Seventh, Eighth, and Eleventh Circuits all find "that the ADA does not impose a mandatory obligation to reassign the disabled employee where the employer has a policy of awarding the transfer position to the most qualified candidate and the employer would be required to turn away a superior candidate." *Garcia v. Whirlpool Corp.* 2010 WL 4628627 *6

(November 5, 2010, N.D. OH).[8]  *But see EEOC V. Huniston-Keeling, Inc.*, 227 F.3d 1024, 1026-1028 (7th Cir. 2000) (holding that *Smith v. Midland Brake, Inc.*, 180 F.3d 1154, 1164-68 (10th Cir. 1999) and *Aka v. Washington Hospital Center*, 156 F.3d 1284, 1303-05 (D.C. Cir. 1998) (which the EEOC relies upon here), are inconsistent with the decisions that hold that the ADA is not a mandatory preference act.).

The Fourth Circuit is in accord with the decision of *Huniston-Keeling*.  In *Sara Lee*, the Fourth Circuit noted that "[a]ll antidiscrimination statutes, from Title VII to the ADA, impose costs on employers.  The difference in this case is that requiring an employer to break a legitimate and non-discriminatory policy tramples on the rights of other employees to penalize employees free from disability in order to vindicate the rights of disabled workers."  237 F.2d at 355 (citing *Huniston-Keeling*, 227 F.3d at 1028-29).  Accordingly, GBMC was not required to reassign Mr. Turner to a vacant position without Mr. Turner complying with GBMC's legitimate and non-discriminatory return from leave policy.

The EEOC also argues that to the extent reassignment was required, GBMC was obligated to review all equivalent vacant positions and inform Mr. Turner about such vacancies. Although GBMC was not required to reassign Mr. Turner, it took numerous steps, some above its normal practice, to assist Mr. Turner in locating a position at GBMC.  Diane Owen wrote Mr. Turner in May 2006 memorializing a meeting among Mr. Turner, Ms. Owen, and Ms. Roberts of GBMC and recounting how Mr. Turner was informed of current job postings.  *See* May 4, 2006, letter attached as Exhibit 23; Owen DP (Ex. 11) at 59, l. 4- l. 20.  Ms. Owen also periodically reviewed all the open positions at GBMC to see what Mr. Turner could apply for to assist Mr. Turner in getting a job.  Owen DP (Ex. 11) at 60, l. 5 -9.  Ms. Owen stated that it was "not my

---

[8]  The Court in *Garcia* noted that the Tenth Circuit follows the D.C. Circuit in holding that the duty to reassign is mandatory.  *Id.*

job to get him a job, but I was trying to get Michael a job." *Id.* at 60, l. 10 – 11; *see also Id.* at 62, l. 4 – 7 (Michael and I "had many discussions about different jobs."); Roberts DP (Ex. 21) at 53, l. 5 – 8 ("Generally, everyone in the hospital wanted to try and find a way to get employment for him.  I believe that that's something [Etna Weinhold] wanted for him, too.  And we talked about that.").  In June 2006 Mr. Turner was advised by GBMC about and refused to consider two file clerk positions.  *See* Exs. 14 and 15.  In addition, in June 2006, a GBMC recruiter obtained an interview for Mr. Turner for a position at the GBMC credit union.  *See* Banks DP (Ex. 16) at 16, l. 21 – 17, l. 2.  There was also discussion within GBMC of creating a position for Mr. Turner, Hussey DP (Ex. 10) at 187, l. 13 – 188, l. 22, and he was interviewed for a file clerk position in GBMC's billing department in June 2006.

Mr. Turner's leave expired on June 30, 2006, and he was terminated.  Nevertheless, GBMC recruiter Kathy Banks continued to assist Mr. Turner in trying to find a position within GBMC.  Banks DP (Ex. 16) at 46, l. 14 – 47, l. 15.  Mr. Turner was interviewed for a birth registrar position in July 2006.  Ms. Banks was still working with Mr. Turner in August 2006 to try and help him locate a position at GBMC.  *Id.* at 48, l. 2 – 21.[9]

Mr. Turner was on GLOA for nearly 17 months before he was cleared to return to work by GBMC's Employee Health physician.  That GLOA was extended by GBMC despite never having been done before and against the recommendation of GBMC's Director of Employee Relations.  Owen DP (Ex. 11) at 32, l. 11 – 16; Roberts DP (Ex. 21) at 29, l. 7 - 20.  GBMC continued to assist Mr. Turner in locating a job within GBMC for at least two months after the termination of employment.  GBMC was not required to identify vacant positions for endless months after his termination.  *See Smith v. Midland Brake, Inc.*, 180 F.3d 1154, 1175 (10th Cir.

---

[9]  Ms. Banks left GBMC's employ in late August or early September 2006.  *Id.* at 9, l. 11 - 13.

1999) (vacant position "includes positions that the employer reasonably anticipates will become vacant in the fairly immediate future.").  The EEOC has not set forth admissible evidence that GBMC did not advise or consider Mr. Turner for positions at GBMC that became vacant in the fairly immediate future of his clearance to return to work or in the fairly immediate future of his termination.  Indeed, the overwhelming evidence of GBMC's efforts to assist Mr. Turner in obtaining a job preclude summary judgment in favor of the EEOC.

### 4.     Mr. Turner Was Not Discharged Because of His Disability.

GBMC terminated Mr. Turner on June 30, 2006, because his GLOA, as extended by GBMC, expired.  GBMC's April 24, 2007, position statement set forth, among other things, that Mr. Turner was not qualified for the unit secretary position.  The EEOC's argument that GBMC admitted that it discharged Mr. Turner because of his disability, EEOC Memo at 21, is baseless and disingenuous.  The authority relied upon by the EEOC makes clear that an employee must be qualified for a job to prove that he was discharged because of a disability.  *Martinson v. Kinney Shoe Corp.*, 104 F.3d 683, 686 (4th Cir. 1997).  As noted above, *supra,* at 19-20, whether Mr. Turner was qualified for the unit secretary position is either conclusively established in favor of GBMC or is a disputed question of fact.

## VI.     The EEOC Is Not Entitled To Summary Judgment On GBMC's Direct Threat Defense.

"The analysis of whether an individual poses a direct threat of harm to him or herself is no different in the context of an affirmative defense under the ADA than it is in considering whether the ADA complainant is qualified for [his] position."  *EEOC v. Browning-Ferris, Inc.*, 262 F. Supp. 2d 577, 592 (D. Md. 2002).  "[T]he ADA requires employers to conduct an individualized assessment of whether an individual with a disability poses a direct threat of harm

before taking an adverse employment action." *Id.* As discussed earlier, Mr. Turner was not qualified for the unit secretary position or for any of the file clerk positions that involved climbing a stool or ladder. *See, supra.* 18-20.

"This Court should not independently assess whether [Mr. Turner] posed a direct threat, but instead must evaluate whether [GBMC's] decision was objectively reasonable." *Brooks v. Micron Tech., Inc.*, No. 00679, 2010 WL 1779693, at *6 (E.D. Va. Apr. 30, 2010). In *Brooks*, the court found that an examination of an employee's strength, a review of his medical history, and discussion with a physician's assistant with whom the plaintiff consulted constituted an individualized assessment. *Id.* That individualized assessment, coupled with the doctor's knowledge of the position at issue, led the court to find that the direct threat defense was objectively reasonable. *Id.*

Here, GBMC conducted an individualized assessment of whether Mr. Turner posed a direct threat of harm. The assessment must be "based on reasonable medical judgment that relies on the most current medical knowledge and/or the best available objective evidence." 29 C.F.R. § 1630.2 (5)(R). Dr. Valle, a board certified physician, conducted two examinations of Mr. Turner, reviewed his medical history, discussed his situation with Dr. Rosenblum, and obtained information from others aware of the nature of the positions Mr. Turner was considering, including the risks involved, and called upon his four years of experience observing unit secretaries at GBMC in action. Accordingly, Dr. Valle's conclusion that it was unsafe for Mr. Turner to work as a unit secretary was objectively reasonable.

There is no dispute that it was objectively reasonable to bar Mr. Turner from file clerk positions that involved climbing on stools or ladders. Mr. Turner conceded that such climbing would be unsafe. *See* Turner DP (Ex. 8) at 116, l. 22 – 117, l. 5. Also, there can be no dispute

that it was objectively reasonable to require a unit secretary in a post-partum unit to be able to respond to and assist in an emergency situation.  The EEOC contends that Mr. Turner never encountered such an emergency situation in 22 years at GBMC.  EEOC Memo at 22.  Etna Weinhold, the supervisor on the unit, testified that situations involving choking babies on the post-partum unit that required an emergency need for assistance occurred approximately three times a month.  Weinhold DP (Ex. 6) at 133, l. 3 - 17.

Simply because Mr. Turner was never faced with an emergency situation does not mean that dealing with such an emergency is not an essential function of the job.

> The fact that no such emergency occurred during [an employee's] tenure and that he was able to perform his job is fortuitous; but an employer may set standards not only for the mundane work but also for the exceptional.  As long as the need to perform in an emergency is a realistic component of the job, the employer should be able to "establish reasonable physical qualifications" to ensure that an emergency situation can be dealt with safely and efficiently by the employee, especially n situations like here, where the physical safety of others may be at risk.

*Wilkerson v. Shinseki*, 606 F.3d 1256, 1264-65 (10th Cir. 2010).

GBMC was free to establish reasonable physical qualifications to ensure that newborns and their mothers were quickly and safely attended to in an emergency.  Accordingly, GBMC's direct threat defense is objectively reasonable.  Thus, GBMC, not the EEOC, is entitled to summary judgment on its direct threat defense.

## VII.    The EEOC Has Not Met Its Burden of Establishing a *Prima Facie* Case of Disability Discrimination.

The EEOC argues that for five positions for which Mr. Turner was not hired it has proved a *prima facie* case of disability discrimination.  EEOC Memo at 25.  The EEOC contends that all but the last requirement of a *prima facie* case, rejection of an application under circumstances

that give rise to an inference of discrimination have been conceded by GBMC.  Focusing on that last element, the EEOC contends that given that Mr. Turner had an outstanding work record and volunteered as a file clerk at GBMC, the fact that he was not interviewed for any of the 28 positions for which he applied, standing alone, is enough to raise an inference of disability discrimination.  EEOC Memo at 24.  The EEOC's argument is factually and legally inaccurate.

Mr. Turner was interviewed by GBMC in June 2006 for two positions, file clerk and credit union teller, and in September 2006 for a birth registration clerk position.  *See* Ex. 22 at 7-17.  In June 2006, Mr. Turner also turned down interviews for two other file clerk positions.  He also applied for ten unit secretary positions for which he was not qualified.  *Id.*  Three of the positions for which he applied were cancelled, and one was already filled by the time Mr. Turner applied.  *Id.*  Thus, the EEOC's factual predicate for its argument is erroneous.

Moreover, the authority cited by the EEOC does not stand for the proposition that simply not receiving interviews proves a *prima facie* case of discrimination.  Both *EEOC v. Sears, Roebuck & Co.*, 243 F.3d 846, 851 (4th Cir. 2001), and *Garland v. USAir, Inc.*, 767 F. Supp. 715, 724 (W.D. Pa. 1991) were race discrimination cases in which there was significantly more evidence than just the failure to interview the candidate, including hiring of a white individual instead, that led to the showing of a *prima facie* case of discrimination.  The EEOC has not set forth that additional evidence.

The EEOC also concludes, without the benefit of factual or legal authority, that because the recruiters at GBMC considered Dr. Valle's assessment that Mr. Turner was not qualified to perform the essential functions of the unit secretary position, those same recruiters considered Mr. Turner's disabilities in not interviewing Mr. Turner for various positions and thus a *prima facie* case is established.  There is no prohibition against employers considering an individual's

ability to perform the essential functions of a job in determining whether to grant that individual

an interview.  GBMC's recruiters determine whom to interview based on information gleaned

from an application or resume, what is said during the screening interview, and determining if

the candidate is able to work the job, the hours, and has the skill set needed.  Banks DP (Ex. 16)

at 18, l. 4-11.

To prove a *prima facie* case of discrimination, the EEOC's "burden is "not onerous," it is

also not empty or perfunctory.  Plaintiff's evidence must be such that, if the trier of fact finds it

credible, and the employer remains silent, the plaintiff would be entitled to judgment as a matter

of law."  *Ennis v. National Ass'n of Bus. & Educ. Radio, Inc.*, 53 F. 3d 55, 59 (4th Cir. 1995)

(quoting and citing *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253-54 (1981)).

The only "evidence" that the EEOC proffers is the testimony of GBMC's corporate designee that

the GBMC recruiter met with and spoke to Mr. Turner on several occasions and developed a

rapport with Mr. Turner such that she felt she could assess Mr. Turner's skills and abilities.

EEOC Memo Ex. 44.  The EEOC has offered no evidence that GBMC's recruiters considered

Mr. Turner's disabilities in not interviewing him for positions.

The EEOC then argues that GBMC has failed to meet its burden of producing evidence

that the adverse employment actions were taken "for a legitimate, non-discriminatory reason."

*Burdine*, 450 U.S. at 254.  To rebut the presumption of discrimination GBMC need only produce

evidence that Mr. Turner "was rejected, or someone else was preferred, for a legitimate, non-

discriminatory reason.  The defendant need not persuade the court that it was actually motivated

by the proffered reasons."  *Id.*

Here, Mr. Turner was not hired because more qualified candidates were given the

positions.  This is not a situation where vague reasons were given.  GBMC has produced the

applications of the individuals selected over Mr. Turner.  *See* Applications attached as Exhibit 24.  Such evidence is enough for GBMC to meet its burden of production as to each of the five positions.

The EEOC also claims that it can show that GBMC's reasons for not hiring Mr. Turner for six other positions are pretextual.  EEOC Memo at 29.  The EEOC argues that setting forth what it contends are contradictory statements by GBMC of reasons for not hiring Mr. Turner entitles it to summary judgment.  *EEOC v. Town & Country Toyota, Inc.*, 7 Fed. Appx. 226, 233 (4th Cir. 2001), upon which the EEOC relies, only states that contradictory statements are convincing evidence of pretext that prevents the entry of summary judgment against the plaintiff.  While GBMC disputes the EEOC characterization of GBMC's statements, even if they are contradictory, they are not conclusive evidence warranting summary judgment in favor of the plaintiff.  Indeed, in the context of the EEOC's summary judgment motion, the Court must view the alleged inconsistent statements in the light most favorable to GBMC.  *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002).  Moreover, once a defendant in a disability discrimination case has met its burden of production, the presumption of discrimination simply drops out of the picture.  *Burdine*, 450 U.S. at 255.  "The defendant's 'production' (whatever its persuasive effect) having been made, the trier of fact proceeds to decide the ultimate question:  whether plaintiff has proved 'that the defendant intentionally discriminated against [him].'"  *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 510-11 (1993) (quoting *Burdine*, 450 U.S. at 253, 255).  The EEOC has not set forth evidence that proves, as a matter of law, intentional discrimination against Mr. Turner.

**CONCLUSION**

Based on the foregoing, GBMC respectfully requests that the Court grant its motion for summary judgment and deny the EEOC's motion for partial summary judgment.


                                        /S/
                                   _____
                                   Lawrence J. Quinn, Bar No. 07545
                                   Kristin P. Herber, Bar No. 27125
                                     Tydings & Rosenberg LLP
                                     100 East Pratt Street, 26th Floor
                                     Baltimore, Maryland  21202
                                     Telephone:  410.752.9700
                                     Facsimile:  410.727.5460
                                     lquinn@tydingslaw.com
                                     kherber@tydingslaw.com

                                   *Attorneys for Greater Baltimore Medical Center,
                                   Inc.*


                         <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on December 7, 2010, the foregoing Reply Memorandum in Support of Greater Baltimore Medical Center, Inc.'s Motion for Summary Judgment and Memorandum in Opposition to EEOC's Cross Motion for Partial Summary Judgment was filed and served via the Court's ECF System on:


        Maria Salacuse, Esquire
        U.S. Equal Employment Opportunity Commission
        City Crescent Building
        10 South Howard Street, 3rd Floor
        Baltimore, Maryland  21201


                                        /S/
                                   _____
                                   Lawrence J. Quinn