IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. RDB-09-2418 |
| GREATER BALTIMORE MEDICAL, CENTER, INC., | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

Plaintiff Equal Employment Opportunity Commission ("EEOC") brings this action for disability discrimination under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, on behalf of Michael Turner ("Mr. Turner") against his former employer, Defendant Greater Baltimore Medical Center, Inc. ("GBMC"). The EEOC moves for summary judgment on its claims that, since at least May 2006, GBMC has engaged in unlawful conduct under the ADA in four ways: first, by declaring Mr. Turner unable to work with or without a reasonable accommodation; second, by failing to accommodate Mr. Turner's physical limitations; third, by terminating Mr. Turner because of his disabilities; and fourth, by failing to rehire Mr. Turner in any capacity because of his record of disabilities. GBMC moves for summary judgment on the basis that the EEOC is judicially estopped from bringing this action because Mr. Turner's Social Security Disability Insurance ("SSDI") application, which states that Mr. Turner is disabled and unable to work, and Mr. Turner's continuing receipt of benefits based upon this application, contradict the EEOC's claim in this case that Mr. Turner is able to work without restrictions.

1

The parties' submissions have been reviewed and oral argument was presented to this Court at a hearing held on January 10, 2011. For the reasons that follow, Defendant GBMC's Motion for Summary Judgment (ECF No. 36) is GRANTED. This Court holds that the EEOC cannot establish that Mr. Turner is a qualified individual who can perform the essential functions of his job under the ADA because the EEOC has not sufficiently explained how Mr. Turner's statement in his SSDI application that he is unable to work and continuing receipt of benefits can be reconciled with Mr. Turner's later statements that he is able to work without reasonable accommodations. Accordingly, Plaintiff EEOC's Cross-Motion for Summary Judgment (ECF No. 42) is DENIED.

## BACKGROUND

In 1984, Claimant Michael Turner began working at Defendant GBMC as a unit secretary. EEOC Summ. J. Mem. Ex. 11 at 13. From 1984 until 1990, Mr. Turner was a part-time nursing unit secretary. *Id*. In 1990, he became a full-time nursing unit secretary. *Id*. Before taking disability leave in 2005, Mr. Turner worked as a full-time unit secretary in the postpartum unit, working the day shift. *Id*. at 53. There is no dispute that as unit secretary Mr. Turner was responsible for, among other things, assisting patients, families, vendors and visitors with security badge access when they entered and left the postpartum unit, answering the phone and patient call lights, and retrieving and sending faxes. *Id*. Ex. 13.

On January 13, 2005, Mr. Turner became hospitalized for treatment of necrotizing fasciitis, which is commonly known as flesh-eating disease. *Id*. Ex. 11 at 26-27. He remained hospitalized for over five months, during which time he had multiple surgeries and completed intensive rehabilitation. *Id*. Though Mr. Turner was released from the hospital in July 2005, his

physician, Dr. Nathan Rosenblum ("Dr. Rosenblum"), did not deem him able to return to work until November 15, 2005. *Id*. Ex. 9. On November 17, 2005, however, Mr. Turner had a stroke and was hospitalized for a second time. *Id*. He remained hospitalized for over a month, and was discharged from the hospital on December 27, 2005. *Id*.

Two days after Mr. Turner's discharge, on December 29, 2005, his mother, Margaret Turner ("Mrs. Turner"), applied for Social Security Disability Insurance benefits on behalf of her son, who was unable to complete the necessary forms because of the effects of his stroke. GBMC Summ. J. Mem. Exs. 2, 3. Mr. Turner's SSDI application states that he became "unable to work because of [his] disabling condition on January 15, 2005" and that he was still disabled at that time. *Id*. Ex. 2. Mr. Turner's SSDI application also obligates him to notify the Social Security Administration ("SSA") "if [his] medical condition improves so that [he] would be able to return to work, even though [he had] not yet returned to work." *Id*.

In conjunction with Mr. Turner's SSDI application, Mrs. Turner also completed a Disability Report on behalf of her son. *Id*. Ex. 4. In this report, Mrs. Turner represented that Mr. Turner's necrotizing fasciitis, diabetes and stroke limited his ability to work. *Id*. On January 9, 2006, Mr. Turner filled out and submitted a Function Report indicating that he had significant weakness on his left side, trouble ambulating and required the assistance of a walker. *Id*. Ex. 3. On January 22, 2006, the SSA determined that Mr. Turner was disabled and awarded him benefits retroactive to January 15, 2005, the date he was first hospitalized. *Id*. Ex. 6. Since that day, Mr. Turner has received monthly SSDI payments of $1,074. *Id*.; Turner Dep. at 190.

On or about January 15, 2005, Mr. Turner applied for and received the maximum twelve months of general leave of absence he was allowed pursuant to GBMC's leave policies. GBMC

Summ. J. Mem. Ex. 9. This general leave included the twelve weeks of leave Mr. Turner was allowed to take under the Family Medical Leave Act ("FMLA"). *Id*. When Mr. Turner's maximum general leave expired, GBMC's Human Resources Department "stretched the rules" and granted him three extra months of general leave in recognition of his long tenure at GBMC. *Id*. Ex. 17 at 50-51. Thus, Mr. Turner remained employed by GBMC but on general leave from approximately January 15, 2005 until June 30, 2006. *Id*. at 32.

Under GBMC's general leave policies, an employee returning from leave is not guaranteed a position, but "will be considered for available vacancies for which he/she qualifies on release to return to work." GBMC Summ. J. Mem. Ex. 9 at 7. In January 2006, after Mr. Turner was released from his second stay at the hospital, Mr. Turner advised GBMC that he wanted to return to work as a unit secretary. Turner Dep. at 56. In accordance with GBMC's leave policy, Mr. Turner's personal physician, Dr. Rosenblum, filled out a Return to Duty/Medical Restriction form indicating that Mr. Turner could return to work part-time as a unit secretary as of March 6, 2006, though he would be restricted in walking and bending, and could not lift more than five pounds. *Id*. Ex. 12. Also in compliance with GBMC's policies, Mr. Turner scheduled a fitness for duty evaluation with a member of GBMC's Employee Health Department, Dr. Paul Valle ("Dr. Valle"). GBMC Summ. J. Mem. Ex. 9 at 6. After evaluating Mr. Turner on March 30, 2006, Dr. Valle determined that Mr. Turner could return to work, but should be limited to working four hours per day, three days a week in a low volume area with little multitasking. *Id*. Ex. 15 at 63, 89-90. Though Mr. Turner wanted to return to his previous position of unit secretary, Dr. Valle did not believe that Mr. Turner could complete the duties of his old position at that time because he was not medically qualified to handle the multitasking

4

required by the unit secretary position. *Id*. 89-90.  Dr. Valle did, however, clear Mr. Turner to return to work as a file clerk.  *Id*. at 117.  The record is unclear as to the essential functions of a file clerk, and how they differentiate from those of a unit secretary.

On April 24, 2006, Mr. Turner met with two GBMC employee relations representatives. EEOC Summ. J. Mem. Ex. 22.  Mr. Turner was told that, because he was not able to return from leave to the same job classification and work the same number of hours he had previously worked, GBMC was not required to provide him a new position.  *Id*.  Mr. Turner was also informed that unless he found a suitable position, his employment with GBMC would end when his leave expired on June 30, 2006.  *Id*.  Mr. Turner was then made aware of two job openings at GBMC for a part-time unit secretary and a part-time file clerk.  *Id*.

On April 27, 2006, Mr. Turner told the employee relations representatives that he would not be applying for the file clerk position because it required mostly standing and walking, and because he did not think the job would be challenging enough.  GBMC Reply Ex. 14.  Mr. Turner did apply for the part-time unit secretary position, however, which was in the surgical intensive care unit, and reiterated his desire to return to GBMC's labor and delivery unit or postpartum units as a unit secretary on a part-time or as-needed basis.  EEOC Summ. J. Mem. Exs. 28-30.  On May 4, 2006, a GBMC employee representative notified Mr. Turner that Dr. Valle did not recommend him for any unit secretary positions, and therefore he would not be considered for those jobs, but encouraged Mr. Turner to continue looking for open positions at GBMC that might suit his skills and abilities.  *Id*. Ex. 30.

On May 15, 2006, Dr. Rosenblum examined Mr. Turner and found him in "much better physical condition than any time since 1992," when he first became Dr. Rosenblum's patient.

EEOC Summ. J. Mem. Ex. 31.  Accordingly, Dr. Rosenblum cleared Mr. Turner to work full-time with no restrictions.  *Id*.  Despite this positive medical review, Mr. Turner did not inform the SSA that he was able to return to work.  On June 1, 2006, Dr. Valle met with Mr. Turner and agreed that Mr. Turner could return to work full-time.  *Id*. Ex. 8 at 114-16.  Dr. Valle maintained, however, that Mr. Turner was not able to return to his old job as a unit secretary.  *Id*. at 148.  On June 9, 2006, a GBMC employee representative offered Mr. Turner the opportunity to apply for a float pool file clerk position.  GBMC Reply Exs. 15, 16.  Mr. Turner did not apply, though, because the position was at an office far from where he lived and he felt it would require too much driving.  *Id*.  That same month, Mr. Turner unsuccessfully applied for three other file clerk positions.  EEOC Summ. J. Mem. Exs. 33-36.  On June 30, 2006, when Mr. Turner's general leave expired, GBMC terminated Turner's employment.  *Id*. Ex. 39.

On August 10, 2006, Mr. Turner began volunteering at GBMC's GYN and Bariatric Clinics, and has worked over 1,100 volunteer hours since that time.  EEOC Summ. J. Mem. Ex. 40.  Since 2006, Mr. Turner has applied to approximately twenty-eight positions at GBMC—ten of which GBMC concedes Mr. Turner was qualified for—but has never been rehired.  *Id*. Exs. 37, 42.

On January 12, 2007, Mr. Turner completed an intake questionnaire for the EEOC in which he stated that his disability would not affect his ability to work as a unit secretary and that he never requested a reasonable accommodation because he did not need one.  GBMC Summ. J. Mem. Ex. 16.  On February 21, 2007, Mr. Turner presented a charge of discrimination against GBMC to the EEOC, alleging disability discrimination based upon his termination and GBMC's failure to reinstate him to the unit secretary position.  *Id*. Ex. 18.  On February 28, 2007, Mr.

Turner amended his charge to add a sex discrimination claim. *Id*. Ex. 19.  Though the EEOC subsequently investigated Mr. Turner's charges and requested documents and a position statement from GBMC, the EEOC took no further action for two years.  Eventually, in March 2009, the EEOC requested more documents from GBMC.  On March 31, 2009, the EEOC issued a letter of determination finding reasonable cause to believe that GBMC violated the ADA by terminating Mr. Turner because of his disability and refusing to employ Mr. Turner in any capacity for which he was qualified. *Id*. Ex. 20.  The EEOC did not find that GBMC engaged in sex discrimination. *Id*.  On September 14, 2009, the EEOC filed the pending action on behalf of Mr. Turner against GBMC for disability discrimination under the ADA.

## STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*  In considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *Id*. at 249.

This Court has an affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993) (quoting

*Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987)). If the evidence presented by the nonmoving party is merely colorable, or is not significantly probative, summary judgment must be granted. *Anderson*, 477 U.S. at 249-50. This Court has previously explained that a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala,* 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citations omitted).

When both parties file motions for summary judgment, as here, this Court applies the same standard of review to both motions, with this Court considering "each motion separately on its own merits to determine whether either [side] deserves judgment as a matter of law." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003); *see also havePower, LLC v. Gen. Elec. Co.*, 256 F. Supp. 2d 402, 406 (D. Md. 2003) (citing 10A Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2720 (3d ed. 1983)).

## ANALYSIS

The Social Security Disability Insurance program provides benefits to a person with a disability so severe that he is "unable to do [his] previous work" and "cannot . . . engage in any other kind of substantial gainful work which exists in the national economy, regardless of . . . whether he would be hired if he applied for work." 42 U.S.C. § 423(d)(2)(A). Seemingly to the contrary, the Americans with Disabilities Act provides a cause of action for disability discrimination for a "qualified individual with a disability"—that is, a person "who, with or without reasonable accommodation, can perform the essential functions" of his job. 42 U.S.C. § 12111(8). Thus, the factual contentions of those seeking relief under both statutes roughly appear to be "I cannot work" (in order to receive SSDI benefits) and "I can work" (to establish

ADA discrimination).  *See Payne v. Fairfax County*, 2006 U.S. Dist. LEXIS 79725, at *18 (E.D. Va. Nov. 1, 2006).  As a result, a potential contradiction arises.

On December 29, 2005, Mrs. Turner filled out an SSDI application on behalf of her son stating that he became unable to work because of his disabling condition on January 15, 2005, and that he was still disabled.  GBMC contends that these assertions, as well as Mr. Turner's continuing receipt of $1,074 in monthly SSDI benefits, are inconsistent with the EEOC's claim that Mr. Turner is able to perform the essential functions of his previous job as a unit secretary.  Thus, GBMC argues that the EEOC's claims under the ADA are judicially estopped because Mr. Turner's continuing receipt of SSDI benefits based upon the claim that he is unable to work precludes the EEOC from bringing suit under the ADA based upon the claim that Mr. Turner is able to work.

### A.   Judicial Estoppel and *Cleveland*

The doctrine of judicial estoppel prevents a party from adopting a position in a legal proceeding contrary to a position successfully argued in an earlier legal proceeding.  *Johnson v. Exxon Mobil Corp.*, 426 F.3d 887, 891 (7th Cir. 2005).  The purpose of this doctrine is to protect the integrity of the judicial process.  *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001).  The elements of judicial estoppel are: the party's positions are inconsistent, the party has acted in bad faith, and judicial estoppel is an appropriate remedy that is tailored to address the harm caused to the integrity of the court.  *Id.* at 750.  While this analysis is still appropriate in many types of cases, in *Cleveland v. Policy Management Sys. Corp.*, 526 U.S. 795 (1999), the Supreme Court considered its application to a similar set of facts and "articulated the standard somewhat differently."  *Detz v. Greiner Indus.*, 346 F.3d 109, 115 (3d Cir. 2003); *EEOC v. Stowe-Pharr*

*Mills, Inc.*, 216 F.3d 373, 378 (4th Cir. 2000) (explaining that the summary judgment framework should be used as "*Cleveland* does not mandate an analysis under the doctrine of judicial estoppel.").

In *Cleveland*, the Supreme Court held that a plaintiff who applies for and receives Social Security Disability Insurance benefits is not automatically barred from pursuing a claim of employment discrimination under the Americans with Disabilities Act because the definition of "disabled" in the Social Security context does not take into account the effects of reasonable accommodations on the plaintiff's ability to work. *Cleveland*, 526 U.S. at 807. However, to survive a defendant's motion for summary judgment, a plaintiff "must explain why that SSDI contention is consistent with her ADA claim that she could 'perform the essential functions' of her previous job, at least with 'reasonable accommodation.'" *Id*. at 798 (quoting the ADA, 42 U.S.C. § 12111(8)). Importantly, after laying out this framework for a basic summary judgment analysis, the *Cleveland* Court articulated the following standard of review:

> To defeat summary judgment, that explanation must be sufficient to warrant a reasonable juror's concluding that, assuming the truth of, or the plaintiff's good-faith belief in, the earlier statement, the plaintiff could nonetheless "perform the essential functions" of her job, with or without "reasonable accommodation."

*Id.* at 807; s*ee also Stowe-Pharr Mills*, 216 F.3d at 378 (to avoid summary judgment, an ADA plaintiff who is shown to have claimed total disability in the context of another statutory scheme "is required to proffer a sufficient explanation for any apparent contradiction between the two claims."). Thus, *Cleveland* explains that a plaintiff may not "simply ignore the apparent contradiction," or "create a genuine issue of fact . . . simply by contradicting his or her own previous sworn statement (by, say, filing a later affidavit that flatly contradicts that party's earlier

10

sworn deposition) without explaining the contradiction or attempting to resolve the disparity." *Cleveland*, 526 U.S. at 806.

After examining the explanation offered by the plaintiff in *Cleveland*, the Supreme Court concluded that she had reconciled her two positions. *Id*. at 807. First, the plaintiff pointed out that unlike the ADA, the SSDI application does not consider whether she could perform the essential functions of her position with a reasonable accommodation. *Id*. Second, the plaintiff argued that the statements she made on her SSDI application were true at the time she made them. *Id*. As a result, the Court remanded the case so that the parties would have the opportunity "to present, or to contest, these explanations, in sworn form where appropriate." *Id*. Thus, *Cleveland* requires this Court to ask two questions: Are the plaintiff's assertions genuinely in conflict? If so, has the plaintiff adequately reconciled the two positions?

      **B.**     **Does the *Cleveland* Analysis Apply to the EEOC?**

Before answering these questions, however, this Court must address the EEOC's argument that it cannot be judicially estopped from bringing these claims based upon statements made by Mr. Turner because the EEOC is not a proxy for Mr. Turner. Specifically, the EEOC argues it cannot be judicially estopped because Mr. Turner "did not bring this lawsuit, is not a party to this lawsuit, and [] forty years of Supreme Court jurisprudence recognizes that the Commission's congressional mandate to enforce anti-discrimination statutes is not derivative of the legal rights of individuals." EEOC Summ. J. Mem. at 33. As an initial matter, as this Court explained above, a traditional judicial estoppel analysis is not the appropriate framework by which to consider the disputed claims in this case. Moreover, in *Cleveland* the plaintiff was an individual, and as such that case involved an analysis of the same plaintiff's present and former

11

claims and sheds no light on whether the EEOC could be bound by prior inconsistent statements made by the claimant on whose behalf the EEOC is bringing its action.

The only case the EEOC cites directly in support of the proposition that it cannot be barred from bringing this suit based upon Mr. Turner's prior inconsistent statements is *EEOC v. Autozone, Inc.*, No. 07-1154, 2009 WL 464574 (C.D. Ill. Feb. 23, 2009). As *Autozone* is a decision out of the Central District of Illinois, it is not binding on this Court. Instead, this Court must follow the relevant United States Court of Appeals for the Fourth Circuit precedent. This Court finds that *EEOC v. Stowe-Pharr Mills, Inc*., 216 F.3d 373 (4th Cir. 2000) compels the conclusion that the EEOC *can* be barred from bringing an ADA suit under *Cleveland* if the EEOC does not provide a sufficient explanation for an apparent contradiction between a claimant's SSDI application and the claimant's later contentions that he is able to work.

In *Stowe-Pharr Mills*, as in this case, the EEOC brought an action under the ADA on behalf of an individual claimant against her former employer. *Id*. Specifically, the EEOC alleged that the defendant employer failed to accommodate the plaintiff, placed her on leave of absence and then terminated her in violation of the ADA. *Id*. at 377. The United States District Court for the Western District of North Carolina, deciding the case before the Supreme Court's *Cleveland* decision, applied the doctrine of judicial estoppel to bar the EEOC from asserting that the claimant was "a qualified person with a disability because [the claimant had] previously taken the position [in her SSDI application] that she was not." *See EEOC v. Stowe-Pharr Mills, Inc*., No. 97-150, 1998 U.S. Dist. LEXIS 21948, at *3 (W.D.N.C. Nov. 9, 1998). As a result, the District Court granted summary judgment in favor of the defendant employer. *Id*.

On appeal, the Fourth Circuit noted that the District Court "did not have the benefit of the Supreme Court's recent decision in *Cleveland*" and thus had not considered the EEOC's explanation for the apparent inconsistency. *Stowe-Pharr Mills*, 216 F.3d at 377. After taking into account the EEOC's explanation for the discrepancy, the Fourth Circuit found that a reasonable juror could conclude that the claimant's SSDI statement did not contradict her assertion in present action that she could have performed the essential functions of her job if Stowe-Pharr Mills had offered her a reasonable accommodation. *Id*. at 379. As a result, the claimant's statements in her SSDI application did not preclude the EEOC from establishing a triable question of fact on whether she was a "qualified individual" under the ADA. *Id*.

Thus, in *Stowe-Pharr Mills* the Fourth Circuit denied summary judgment in favor of the defendant employer because the EEOC had sufficiently harmonized the claimant's assertions on her SSDI application with the EEOC's position. Following this logic, it seems likely that the Fourth Circuit would have granted summary judgment in favor of the defendant employer had the EEOC failed to sufficiently harmonize the claimant's assertions on her SSDI application with the EEOC's position. Accordingly, this Court interprets *Stowe-Pharr Mills* to mean that granting summary judgment in favor of the defendant employer is appropriate where a claimant's SSDI application contradicts the EEOC's contention that the claimant can perform the essential functions of the job—unless the EEOC provides a sufficient explanation for the claimant's prior inconsistent statements as required under *Cleveland*.

### C. Application of the *Cleveland* Analysis to this Action

Applying the *Cleveland* summary judgment analysis to this case, this Court must first determine whether the positions taken by Mr. Turner in his Social Security Disability Insurance

13

application and by the EEOC in this case are genuinely in conflict.  Mr. Turner's December 29, 2005, SSDI application states that he became unable to work on January 15, 2005, and that he was still disabled.  Based upon Mr. Turner's December 2005 representations, the Social Security Administration awarded Mr. Turner disability benefits, which he continues to receive to this day in reliance on the fact that he is still unable to work.  Five months after Mr. Turner told the SSA he was unable to perform his job because of his disabilities, however, Mr. Turner represented to GBMC that he was able to work with no restrictions.  Mr. Turner's representation is confirmed by Dr. Rosenblum's diagnosis (EEOC Summ. J. Mem. Ex. 31), Mr. Turner's EEOC intake questionnaire (GBMC Summ. J. Mem. Ex. 16 at 0027), Mr. Turner's own deposition testimony (*Id*. Ex. 1 at 161-62), his mother, Mrs. Turner's, deposition testimony (GBMC Reply, Ex. 18 at 130) and notes regarding his EEOC interview written by an EEOC employee (*Id*. Ex. 1 at 00102).  These two positions are patently inconsistent.  Thus, on its face, Mr. Turner's SSDI application and continuing receipt of benefits contradicts the EEOC's claim in this case that Mr. Turner can perform the essential functions of the unit secretary position.  Accordingly, this Court must grant summary judgment in favor of GBMC unless the EEOC provides a sufficient explanation for the contradiction as required under *Cleveland*.

  Consequently, this Court next must resolve whether the EEOC has adequately reconciled Mr. Turner's previous representation that he was unable to work and his continuing receipt of benefits based upon that representation with Mr. Turner's subsequent statements that he can work without reasonable accommodations.  The EEOC's main argument appears to be that Mr. Turner's statements in his SSDI application were true when he made them, but that Mr. Turner has since recovered and become able to perform the necessary functions of his old unit secretary

position—or even other positions at GBMC—with or without a reasonable accommodation. However, the SSDI application clearly requires Mr. Turner to inform the Social Security Administration if his medical condition improves such that he is able to return to work, even if he has not yet returned to work. GBMC Summ. J. Mem. Ex. 2. Though Mr. Turner has improved so significantly that he and his personal physician believe he is able to return to work without restrictions, and though Mr. Turner has applied for numerous jobs at GBMC both before and after his termination, Mr. Turner has never informed the SSA that he is able to return to work. As long as Mr. Turner is receiving SSDI benefits he is continuing to represent to the SSA that he is still disabled and unable to work at all or without a reasonable accommodation. This representation therefore conflicts with Mr. Turner's claim in this case that he is able to work without any accommodations at all.

The EEOC emphasizes that Mr. Turner is not deceiving the Social Security Administration by continuing to receive benefits because he is actively participating in the SSA's Ticket to Work Program. Yet, Mr. Turner did not enroll in that program until January 13, 2009—three years after he told GBMC he was able to return to work part-time, and over two-and-a-half years after Mr. Turner informed GBMC that he was able to return to work without any restrictions. EEOC Summ. J. Mem. Ex. 53. Furthermore, there is no record as to whether Mr. Turner told the EEOC he was able to return to work on a full time basis when he enrolled in the Ticket to Work Program.

The EEOC also argues that Mr. Turner never represented that he was "totally disabled" in his SSDI application or in the course of his treatment. This Court does not see how the EEOC's reasoning reconciles the inconsistency between Mr. Turner's SSDI application and the EEOC's

15

contention that he is able to work without accommodations. Even if Mr. Turner represented that he was able to work with reasonable accommodations in his SSDI application—and not that he was "totally disabled"—Mr. Turner's SSDI application is still at odds with his numerous statements during and after his employment with GBMC that he never needed a reasonable accommodation to perform the unit secretary job or other positions he applied for at GBMC.[1]

On these facts, this Court finds that Mr. Turner has taken inconsistent positions—one in order to receive SSDI benefits and another in an attempt to get his job back. The EEOC has not provided an explanation for these inconsistencies that is sufficient to warrant a reasonable juror's concluding that Mr. Turner is able to perform the essential functions of his job with or without accommodations. Thus, the EEOC cannot prove one of the necessary elements of a prima facie case under the ADA. Because the EEOC cannot establish that Mr. Turner is a qualified individual with a disability, this Court need not reach the merits of the EEOC's claims under the ADA.[2] Accordingly, summary judgment must be granted in favor of Defendant GBMC, and this Court denies summary judgment as to the EEOC.

---

[1] It is worth noting that Mr. Turner's mother filled out his SSDI application and accompanying Adult Disability Report because "Michael Turner was unable to complete the application due to his stroke." EEOC Summ. J. Mem. at 38 n. 27. Mr. Turner's inability to fill out the SSDI form on his own lends credence to the argument that he was, in fact, totally disabled at the time he sought SSDI benefits.

[2] The EEOC alleges that GBMC has engaged in unlawful conduct under the ADA. If the EEOC had been able to establish that Mr. Turner was a qualified individual, this Court would have addressed issues including whether Mr. Turner should have been provided a reasonable accommodation, whether GBMC should have assigned Mr. Turner to his previous position or a different position, and whether Mr. Turner was terminated because of his disabilities.

## CONCLUSION

For the reasons stated above, Defendant GBMC's Motion for Summary Judgment (ECF No. 36) is GRANTED and Plaintiff EEOC's Cross-Motion for Summary Judgment (ECF No. 42) is DENIED.

A separate Order follows.

Dated: January 21, 2011              /s/_____
                                                 Richard D. Bennett
                                                 United States District Judge